## HENRY F. KEYSER v. J. O. MEUSBACK ET AL.

### No. 5974.

1. **Fact Case—Location of Survey.**—See discussion of testimony and deduction from the facts shown as to the location of a survey in controversy.

2. **Intent of Surveyor — Correction of Survey.** — Where the intent of a surveyor in correcting the field notes of a survey are manifest and the corrected field notes are carried into the patent, such intention must prevail, rather than whether such correction should have been made; that is, the corrected field notes evidence the survey.

3. **Exclusion of Immaterial Testimony.**—See testimony held immaterial and insufficient to control documentary evidence to the location of a survey.

4. **Disclaimer as to Part of Land Sued for—Costs.**—In an action of trespass to try title the defendant pleaded not guilty; a trial was had, and after reversal on appeal the defendant by amendment set up title only to a part of the land sued for, and on the trial made good the claim; *held*, that plaintiff was entitled to costs of suit up to the filing of the amended answer, which was in effect a disclaimer as to all the land sued for and not claimed in the amended answer.

APPEAL from Mason.   Tried below before Hon. A. W. Moursund.
The opinion contains a statement of the case.

*J. C. Mathews,* for appellant, cited Jones v. Burgett, 46 Texas, 291; Galveston County v. Tankersley, 39 Texas, 652; Anderson v. Stamps, 19 Texas, 460; Whitehead v. Foley, 28 Texas, 268; Bracken v. Jones, 63 Texas, 184; Peyton v. Barton, 53 Texas, 303; Bolton v. Lynn, 16 Texas, 106; Welder v. Hunt, 34 Texas, 47; George v. Thomas, 16 Texas, 92; Stroud v. Springfield, 28 Texas, 665; Greenwood v. The State, 35 Texas, 590; O'Neil v. Brown, 61 Texas, 37; Smith v. Russell, 37 Texas, 247; Rev. Stats., arts. 4805–4808.

*Hancock, Shelley & Hancock,* for appellees.

GAINES, ASSOCIATE JUSTICE.—This is an action of trespass to try title brought by appellant against appellees, and involves a question of boundary.   The plaintiff claims under the John Lewis survey, and the defendants under the G. W. Hansell.   The north boundary of the Lewis and the south boundary of the Hansell surveys are involved, but since the plaintiff claims title to the Lewis only and must recover upon the strength of his own title, the controversy resolves itself into the question of the true position of the north line of the latter survey.   The Hansell, the Lewis, and the Alley surveys were all originally made at the same time and by the same surveyor.   The field notes of the Lewis survey as patented called to begin at the southeast corner of the Alley, but none of its corners are now marked upon the ground.   They must be ascertained by the surrounding surveys.   The field notes of the Alley call to begin at the southwest corner of the Silcriggs, which is an established corner. The difficulty of fixing the north boundary line of the Lewis grows out

of a question as to the true location of the Alley survey. The plaintiff claims that the Alley should be located by beginning at the southwest corner of the Silcriggs and running thence north 1000 varas, thence west 1000 varas, thence south 1000 varas, and thence east 1000 varas to the beginning. The defendants on the other hand claim that it is properly located by running from the southwest corner of the Silcriggs south 1000 varas, thence west 1000 varas, thence north 1000 varas, and thence east to the beginning. Since the Lewis begins at the southeast corner of the Alley and lies south of that survey, it is apparent that the north line claimed by the plaintiff lies 1000 varas further north than that claimed by the defendants. According to the line claimed by the plaintiff, the land in controversy is embraced in the Lewis survey; according to the line claimed by the defendants, it is excluded.

The following plat shows the relative location of the surveys above mentioned as claimed by plaintiff:

And the following shows their relative position as claimed by the defendants:

· The first difficulty in determining the proper calls of the Hansell survey arises from certain erasures and interlineations in the original field notes filed in the Land Office. A photographic copy has been sent up with the record, and it shows that commencing at the Silcriggs southwest corner the call for the first line was originally written "north 1000 varas," but that the word north was crossed out and over it the word "south" was written, which was also crossed out. Under the two words so erased the word "south" was again written and left unerased. In the call for the third line the word "south" was originally written, but precisely corresponding changes were made, so that the call was left to read "north." When and why these changes were made there is no direct evidence to show. The interlineations appear to have been written by the same hand that wrote the original, but apparently with a finer pen—from which it is to be inferred that they were not made at precisely the same time that the field notes were originally written. But a certified copy of the record of the field notes from the office of the surveyor of the Bexar Land District shows that they were recorded March 9, 1846, and that the changes had been made when they were so recorded.

The patent to the Alley survey was introduced in evidence, and it shows the call for the first line to run north and for the third line to run south. The original accompanies the transcript, and it clearly appears to have been altered. The words "north" and "south" are written over erasures. It was proved by two witnesses that they saw the patent many years ago, and that as then written the call for the first line was south and that for the third was north. That such were the calls in the patent as issued is also shown by a certified copy of a record thereof which was made upon the record of deeds of Gillespie County in September, 1854. The record of the Alley patent in the General Land Office now also calls "north" for the direction of the first line and "south" for that of the third. But it was shown by the testimony of the Commissioner that the calls for direction have been altered by erasing the original words and writing the words "north" and "south" over the erasures respectively.

If the surveyor in 1845, when he run the lines of this group of surveys, placed the Alley survey in the northern position—that is to say, west of the Silcriggs—it seems to us that before he recorded the field notes and forwarded them to the Land Office he deliberately changed them so as to locate the land southwest of the latter survey—that is to say, in its southern position. We think there is no reason to doubt that the patent as originally issued placed the survey southwest and not west of the Silcriggs survey.

The original field notes of the Lewis and of the Alley surveys were recorded in March, 1846, within a few days of each other. But the original field notes of the Lewis were canceled in October, 1846, and corrected field notes of that survey duly entered of record. The original field notes called to begin at the southwest corner of the Silcriggs—the same which

is now claimed by plaintiff as the beginning corner of the survey. The corrected field notes did not mention the Silcriggs corner, but called to begin at the southeast corner of Alley. There was no other change. The patent to the Lewis follows the corrected field notes. If the southwest corner of the Silcriggs and the southeast corner of the Alley were the same, as plaintiff claims them to be, why the necessity of this correction in the field notes of the Lewis? The conclusion is irresistible that however the Alley may have been originally surveyed, at the time of the correction the southeast corner of the Alley and the southwest corner of the Silcriggs were regarded by the surveyor and the locator as being at different points. If the Alley survey occupied the position now claimed by plaintiff, namely the northern position, then the two corners mentioned were the same; but if it occupied the southern position, then the corners were not coincident—the southeast corner of the Alley being 1000 varas south of the southwest corner of the Silcriggs. The southeast corner of the Alley is either at the southwest corner of the Silcriggs or 1000 varas south of that point. There is no evidence tending to show its location at any other place. It necessarily follows that the object of canceling the original field notes and the substitution of the corrected calls for the survey was to place the beginning corner at a point 1000 varas south of the southwest corner of the Silcriggs, instead of locating it at that corner as originally called for.

It is to be borne in mind that when this change was made the field notes of the Alley were on record in the office of the surveyor of the land district, and that the field notes so recorded gave the survey its southern position. With the Alley in the southern position and the Lewis calling for the southwest corner of the Silcriggs as its beginning corner, there was clearly a conflict between the two surveys to the full extent of the Alley. This conflict was avoidable by placing the beginning corner of the Lewis not at the corner originally called for, but at a point 1000 varas south of that corner, where the southeast corner of the Alley was then called to be, and where it was at least supposed to be. That such was the intention is made more manifest by the fact that the call for the southeast corner of the Alley in the corrected field notes of the Lewis describes the corner by the bearing trees called for in the field notes of the Alley, then upon record, as marking that corner. None of the corners of the Lewis or Alley surveys can be identified by the objects called for in the patents, except the beginning corner of the Alley—the southwest of the Silcriggs. The position of the north line of the Lewis must be established by taking as its beginning point the place where the surveyor who corrected its field notes supposed the southeast corner of the Alley to be located. That he acted in making the correction upon the hypothesis that that corner was 1000 varas south of the southwest corner of the Silcriggs survey the evidence shows beyond doubt. We are of opinion that the Alley patent as

originally issued covers the land lying southwest of the Silcriggs corner, although the lines as originally run may have embraced the land lying west of that survey. But should the evidence have been less conclusive upon this question, it should not change the result of this case.

The question in this case is not where is the true location of the southeast corner of the Alley survey, but where did the surveyor who corrected the field notes of the Lewis understand it to be. That he understood it to be at a point 1000 varas south of the southwest corner of the Silcriggs, we have no doubt. We are equally clear the northeast corner of the Lewis must be located where he intended to place it, and that the true north line of the survey runs west from that point. The north line being so established, the Lewis survey embraces none of the land in controversy, and therefore the defendants were entitled to a judgment. The court below gave them a judgment, but reached its conclusion by a process of reasoning based upon a different conclusion of fact. The judgment being correct, we need not inquire whether the grounds upon which it is based are tenable or not.

It is complained that the court erred in excluding the report of one Clark, a surveyor appointed by the court to make a survey of the land. The report was not sworn to, and it was objected to both on that and on the further ground that the evidence was immaterial. At the time of the trial Clark was dead, and the report was also offered as the declarations of a deceased surveyor. The report tended to show that placing the Alley survey in the northern position, and taking the southwest corner of the Silcriggs as the northeast corner of the Lewis, the surveys all corresponded with each other, and left no vacant land between them, and that each survey would have its full quantity; but that placing the Alley in its southern position, there would be a large excess in the Hansell and a deficiency in the Lewis, and that there would be unappropriated land lying between the three surveys. We are of the opinion that the evidence excluded would not have authorized the court to render a different judgment, and that therefore the plaintiff has not been prejudiced by it exclusion. The same may be said of the testimony offered as to what the surveyor Clark testified on a former trial.

Neither do we think that any of the other testimony offered by plaintiff and excluded by the court should have led to a different result. The facts, if they be facts, that the distance called for in the eastern line of the Hansell does not reach the southwest corner of the Silcriggs; that it was common reputation in the neighborhood that the Alley survey lay west of the Silcriggs; and that defendant Meusback admitted that the Alley survey was so located, ought not to prevail against the documentary evidence as to the true location of the Lewis north boundary line.

It is also assigned that the court erred in rendering judgment against

the plaintiff for all the costs of suit. The plaintiff brought suit for the entire Lewis survey, and the original answer of the defendants contained only a plea of not guilty. After the first trial defendants filed an amended answer, claiming only a part of the land sued for by the plaintiff. Upon the trial they recovered the land claimed in the amended answer, but not all the land claimed in the petition. The amended answer claiming only a part of the land sued for, was equivalent to a disclaimer of the remainder (Rev. Stats., art. 4805), and defendants having recovered the land claimed in the amended answer, were entitled to recover all costs which accrued after filing of that pleading (Rev. Stats., art. 4806); but they should have been adjudged to pay all costs which accrued before that time.

The judgments as to costs will be accordingly reformed, and in all other respects affirmed.

The appellant having failed to move in the court below for a correction of the judgment as to costs, will be adjudged to pay the costs of this court.

*Reformed and affirmed.*

Delivered April 25, 1890.