## R. H. BARROW v. WILLIAM LYONS ET AL.

### Decided March 29, 1905.

**1.—Boundaries—Field Notes of Private Surveys.**

In a contest as to the true boundary line of an original survey patented by the government, field notes purporting to be notes of a survey made for the original grantee signed by "D. B., surveyor," with nothing indicating that he acted under any official authority or connecting such field notes with the original grant, were not conclusive and could be shown by other evidence to be incorrect.

**2.—Same—Field Notes not Conclusive.**

Even the field notes of the original surveyor are not held absolutely conclusive, but every circumstance is admitted that tends to show the tracks of the surveyor on the ground.

Appeal from the District Court of Jefferson. Tried below before Hon. A. T. Watts.

*Masterson, Morris & Masterson,* for appellant.—Evidence is not admissible to prove the lines of a survey to have been actually made at a place not called for by the field notes of a survey, or to vary the location of a survey from the location where its own field notes will clearly locate it. Johnson v. Archibald, 78 Texas, 96; Anderson v. Stamps, 19 Texas, 465; Thompson v. Langston, 87 Texas, 258.

*Greer & Minor, Martin, Easterling & Martin* and *Fiset & McClendon,* for appellees.—In the location of a survey upon the ground, the object to be attained is to ascertain the exact lines laid out by the surveyor in making the survey, or, in other words, to follow the footsteps of the surveyor; and to reach this end no rigid rules of evidence can be applied, but any evidence which, under all the facts and circumstances of a given case, would tend to show the true location of a survey as actually made by the surveyor on the ground at the time is competent, and the court did not err in admitting the testimony complained of, nor in establishing the north line of the Dean and Horton surveys as found in the judgment. Stroud v. Springfield, 28 Texas, 649; Fagan v. Stoner, 67 Texas, 287; Blasengame v. Davis, 68 Texas, 597; Boone v. Hunter, 62 Texas,

582; Barrow v. Gridley, 59 S. W. Rep., 914, par. 2; Hubert v. Bartlett, 9 Texas, 104; Medlin v. Wilkins, 60 Texas, 414; 1 Sayles' Early Laws of Texas, art. 398, p. 271; art. 766, p. 404; art. 773, p. 411.

FLY, ASSOCIATE JUSTICE.—This suit was instituted by appellant against William Lyons, H. M. Trueheart, Mrs. H. V. Keith, L. N. Goldbeck, A. F. Bemis and the Southwestern Rice Company, to recover a tract of 1,280 acres of land which was surveyed for the public school fund of Texas by virtue of Confederate Certificate No. 95, issued to Mrs. P. J. Chiles. The appellees answered by general denials and pleas of not guilty, and filed special pleas setting up cross-actions against appellant, and sought to make new parties. All parts of the answers were stricken out except the general denials and pleas of not guilty. The cause was discontinued as to William Lyons, and on a hearing of the cause by the court, judgment was rendered for appellees.

Appellees showed title to themselves by successive links in the chain back to grants made by the Mexican government to Susanna Horton and Sophia Dean, in February, 1835, and the contest was as to the location of the north lines of those two grants. The north line of the S. Horton grant is a continuation of the north line of the Dean grant, and if the north line of the latter grant is the same as the south line of an older survey, known as the Ramayor, or Thos. F. McKinney, a vacancy occurs between the Horton and Dean north line and the south lines of surveys numbers 98, 99, 100 and 101 made for the Texas & New Orleans Railway Company, the boundaries of which are well marked and defined, but all of which call for the north line of the Horton and Dean surveys as their south line. It is the contention of appellant that there was no conflict between the Thos. F. McKinney and the Dean surveys, but that the north line of the Dean survey, and consequently the north line of the Horton survey, is fixed by the south line of the McKinney, which was an older survey.. On the other hand, it is the contention of appellees that the Dean survey conflicted with the McKinney survey to such an extent as to throw its north line so far north as to leave no vacancy between the Horton and Dean surveys and the surveys made for the Texas & New Orleans Railway Company. The following map will make clearer the points of controversy between the parties:

The court admitted in evidence the call in the field notes of several surveys, other than the Dean and S. Horton surveys, as testimony to be considered by the court in locating the north line of the Dean and Horton surveys, and the admission of such testimony is complained of in the first assignment of error, on the ground that the location of the lines of those two surveys was fixed with certainty by the calls of their respective field notes. In the grants by the Mexican government to S. Horton and Sophia Dean the field notes are such that the land could not now be identified by them alone, and appellant introduced in evidence

what is called by its author "notes of a survey made for Sophia Dean in the prairie, south of Manars or Skates survey, about fifteen miles west of Santa Anna." In those notes the call for the north line of the Dean survey makes it the same as the south line of the Skates or Manars survey, which is the same as the McKinney survey above mentioned. Those notes were made by a man who signs them "David Brown, Surveyor." There is nothing in the record to indicate that his notes had any connection with the original survey, which was made by Arthur Henrie, under direct authority of the Mexican government. David Brown, so far as shown, appears to have been a private surveyor acting under no official authority in making the survey, whose work, if done as stated for Sophia Dean, was afterwards repudiated by her in a deed made by her to the survey, in which she expressly reserved that part of it in conflict with the McKinney survey.

Although no authority is shown under which Brown acted in making the Dean survey, it is the contention of appellant that his field notes are of such dignity that they can not be attacked nor shown to be inaccurate or incorrect, and as authority for the proposition he cites Cook v. Dennis (61 Texas, 246); Ayres v. Harris (77 Texas, 64), and Irvin v. Bell (80 Texas, 332). It is revealed, by a consideration of those cases, that neither of them sustains appellant's proposition.

In Cook v. Dennis the court states: "To aid in the identification of the land, appellant offered to read as evidence a certified copy of the original field notes of the survey. It seems that these were made out in the English language, and passed to the Commissioner for extending grants; that they were translated into the Spanish language, and, as thus translated, were incorporated into the grant. The courses and distances along the meanders of the river, as given in the original, were omitted in the translation. Therefore, it was to supply the omission, and to aid the grant, that the certified copy was offered in evidence." In this case there is nothing to indicate that Brown made out the original field notes, or that any part of them was embodied in the grant; in fact, no connection whatever between them and the original grant appears from the record.

In the case of Keyser v. Meusback it was held that, where the intent of a surveyor, in correcting the field notes of a survey made by him, is manifest, and the corrected field notes are carried into the patent, the corrected field notes must prevail. That does not sustain the proposition that field notes made by another surveyor than the one who made the original survey, which are not carried into the grant, can not be shown to be incorrect.

In the case of Irvin v. Bell the Mexican government directed the "surveyor citizen D. Brown" to make the survey, and he made the original survey, his field notes being in English. They were translated and went into the original grant. The court said: "There can be no doubt about what are called the English field notes being the original ones made by the surveyor and the ones upon which the title was issued. . . . The English field notes being the original, and being preserved along with the Spanish copy of them as an archive, and the title not itself containing the field notes, but referring in that respect to the report of the surveyor, we think it was proper to treat them as part of

the title, and not as extraneous evidence changing or contradicting it." Even in that case evidence aliunde was introduced to show the true location of the land. The facts in that case are like those in this. In this case the order of the Mexican government for the survey was directed to "citizen Arthur Henrie," and not to "citizen Brown," and he made the survey, and the survey of the "surveyor citizen Arthur Henrie" is referred to and made a part of the original grant.

It follows that the court did not err in allowing the introduction of evidence tending to show that the field notes made by Brown were not infallible and not conclusive. It has not been held, in the case of the field notes of the original surveyor, that they are absolutely conclusive, but in every case every circumstance is admitted that tends to show the tracks of the surveyor on the ground. It is true, as said in the case of Anderson v. Stamps (19 Texas, 465), that it is not meant that calls in a grant for certain known and established, natural or artificial monuments, can be controlled by parol proof of a survey entirely inconsistent with and repugnant to all calls of the grant, and nothing of the kind was undertaken in this suit. No attempt was made to vary the calls in the grant by parol evidence, but to explain them.

The maps from the General Office, dated in 1840, 1862, 1873 and 1882, all of which are older than appellant's grant, show a conflict between the Dean and McKinney surveys. Sophia Dean, in a deed to her grant on July 8, 1845, reserved all that part of it that conflicted with the Thos. F. McKinney survey, and the same thing was done by her grantees in their deeds to others. It was shown that long prior to 1884, when the patent under which appellant claims was granted, it was generally recognized by those living in the vicinity of the land that the north line of the Dean survey was in the place claimed for it by appellees. The railroad surveys called for that north line, and were actually run to the north line claimed by appellees, and those surveys were made in 1871. In addition to the above, surveys starting from well-established corners and lines of old surveys were made that fixed the north line of the Dean survey in the place claimed by appellees. There is sufficient evidence to sustain the judgment of the court.

The judgment is affirmed.

*Affirmed.*