## STATE v. ATLANTIC OIL PRODUCING CO. et al.

### No. 8489.

Court of Civil Appeals of Texas. Austin.

Oct. 27, 1937.

Rehearing Denied Nov. 24, 1937.

Wm. McCraw, Atty. Gen., and Scott Gaines, C. M. Kennedy, and Russell Rentfro, Asst. Attys., Gen., for the State.

Greenwood, Moody & Robertson, of Austin, E. R. Hastings, of Tulsa, Okl., Thompson, Mitchell, Thompson & Young, of St. Louis, Mo., Andrews, Kelly, Kurth & Campbell, of Houston, Thompson, Knight, Baker & Harris, of Dallas, P. G. McElwee and R. E. Seagler, both of Houston, Sam Mason, of Shreveport, La., George M. Conner, of Ft. Worth, C. F. Richards, of

Lockhart, W. M. White, Jr., of Mexia, Blalock, Blalock, Lohman & Blalock and J. M. Slator, Jr., all of Houston, David B. Trammell, of Ft. Worth, S. M. Leftwich, of Dallas, and David Proctor, of Houston, for appellees.

BAUGH, Justice.

The State brought this suit in trespass to try title, and for damages, against the Atlantic Oil Producing Company and numerous other oil companies and individuals. It sought to recover as vacant lands some 500 acres consisting of narrow strips along the course of the Sabine river in Gregg county about 12 miles southwest of Longview, and damages in the sum of $7,800,-000 for oil taken therefrom. The case was tried to a jury, but at the close of the evidence the trial court instructed a verdict for the defendants and rendered judgment accordingly, from which judgment the State has appealed.

Appellant presents in its brief 13 propositions supported by citations of numerous authorities and quotations therefrom, most of which are clearly correct statements of the rules of law asserted. We do not deem it necessary to discuss most of them for the reason that the sole question presented is whether the Sabine river constitutes the south boundary of the Francis W. Johnson survey in Gregg county; or whether the numerous meander lines located by course and distance as set out in the patent constitute its south boundary.

The Francis W. Johnson survey was patented to her assignees on March 7, 1873, and called for 3,501 acres. The certificate under which it was located called for a league and labor, and, after the Johnson survey was carved out of it, the balance of such acreage was located and patented elsewhere in Gregg and Rusk counties. We are here concerned, however, only with the proper location of the Johnson survey. This survey is very irregular in shape, there being 33 different calls for course and distance on its south boundary extending along the meanders of the Sabine river a distance of approximately 10 miles. Its width east and west, according to the field notes of the patent, was approximately 4 miles; and the width north and south, or extending back from the river, varied from about 2 miles to less than half a mile from the

Sabine river. The west, north, and east lines of the Johnson survey, consisting of 23 different course and distance calls, were common boundary lines between the Johnson and 12 other surveys surrounding it on those sides. The general course of the Sabine river in this area was from northwest to southeast. Manifestly the delineation of the outer boundaries of the entire tract presents a problem resembling a jigsaw puzzle.

The records of the general land office show that the field notes of the original survey of the Johnson, made by Scott, surveyor, were filed in the general land office in August, 1861, and the plat thereof, prepared by the surveyor and attached to his field notes, showed the survey to be bounded by the Sabine river for its entire south boundary. The land commissioner rejected these field notes on the ground that they did not close. Nothing further appears to have been done until September 18, 1871, when corrected field notes for said survey were filed in the general land office, on which the indorsement was made, "Also original field notes must be returned to compare the endorsement thereon with these field notes," and a further indorsement indicating two errors in calls. To these field notes was also attached a plat showing the Sabine river as constituting the south boundary of said survey. Another set of corrected field notes, embodied in the patent, were filed in the general land office on March 27, 1873, which were approved by the land commissioner and patent issued thereon. This set of field notes did not have a plat attached showing the location of said survey. All of said sets of field notes were based upon the survey made in 1861. All of them placed this survey in Upshur county, 18 miles southeast from the town of Gilmer, the first and second sets of field notes describing it as located "on the north bank of the Sabine River"; and the third set, on which it was patented, as located "on the north side of the Sabine River." It is not controverted that in all of said field notes, the southeast or lower corner of said survey and the southwest or upper river corner were located on the Sabine river. For purposes of comparison we copy below the calls for the south boundary line of said survey as made in each of the three sets of field notes filed in the general land office:

| | Original Field Notes | First Corrected Field Notes | Final Field Notes |
|---|---|---|---|
| 1 | Thence south with the West line of No. 245 at 1370 vrs. to a stake on the North bank of the Sabine River, from which a maple bears S 33 West 4-2/10 vrs. a hornbeam bears S 83 W 4 vrs; | Thence south with the West line of No. 245 at 1370 vrs. the north bank of the Sabine River, a stake for a corner, from which a maple bears S 33 W 4-2/10 vrs. a hornbeam bears S 83 W 4 vrs.; | Thence south with the west line of No. 245 at 1370 vrs. to a stake on the north bank of the Sabine River, from which a maple bears S 33 W 4-2/10 vrs., a Pine bears S 83 W 4 vrs.; |
| 2 | Thence West with said river at 338 vrs.; | Thence up said river with its meanders; West 315 vrs.; | Thence W with said river at 338 vrs.; |
| 3 | Thence S 32 W 200 vrs; | S 32 W 200 vrs.; | Thence South 32 W 200 vrs; |
| 4 | Thence S 50 W 366 vrs; | S 50 W 366 vrs.; | Thence S 50 W 366 vrs; |
| 5 | Thence S 20 W 301 vrs; | S 20 W 300 vrs.; | Thence South 20 W 301 vrs; |
| 6 | Thence S 40 W 1455 vrs; | S 40 W 1455; | Thence S 40 W 1455 vrs; |
| 7 | Thence W 516 vrs; | W 516; | Thence West 516 vrs; |
| 8 | Thence North at 100 vrs; | North 100 vrs; | Thence North at 108 vrs; |
| 9 | Thence N 45 W 534 vrs; | N 45 W 314; | Thence N 45 W 340 vrs; |
| 10 | Thence N 10 W 200 vrs; | N 10 W 200; | Thence N 10 W 220 vrs; |
| 11 | Thence N 50 W 180 vrs; | N 50 W 180; | Thence N 50 W 200 vrs; |
| 12 | Thence N 20 W 300 vrs; | N 20 W 300; | Thence N 20 W 310 vrs; |
| 13 | Thence N 70 W 976 vrs; | N 70 W 976; | Thence N 70 W 976 vrs; |
| 14 | Thence N 75 E 450 vrs; | N 75 E 450 vrs; | Thence N 75 E 450 vrs; |
| 15 | Thence N 52 E 446 vrs; | N 52 E 446; | Thence N 52 E 446 vrs; |
| 16 | Thence N 85 E 506 vrs; | N 85 E 506; | Thence N 85 E 506 vrs; |
| 17 | Thence N 35 E 208 vrs; | N 35 E 208; | Thence N 35 E 208 vrs; |
| 18 | Thence N 35 W 204 vrs; | N 35 W 204; | Thence N 35 W 204 vrs; |
| 19 | Thence W 356 vrs; | West 356; | Thence West at 556 vrs; |
| 20 | Thence North at 1000 vrs; | North 906 vrs; | Thence North at 966 vrs; |
| 21 | Thence N 25 E 760 vrs. | N 25 E 760; | Thence N 25 E 760 vrs; |
| 22 | Thence N 63 E 140 vrs; | N 63 E 140; | Thence N 63 E 140 vrs; |
| 23 | Thence N 80 E 525 vrs; | N 80 E 525; | Thence N 80 E 500 vrs; |
| 24 | Thence N 30 E 200 vrs; | N 30 E 200; | Thence N 20 E 200 vrs; |
| 25 | Thence N 10 E 300 vrs; | N 10 E 300; | Thence N 10 E 300 vrs; |
| 26 | Thence N 35 W 200 vrs; | N 35 W 200; | Thence N 35 W 200 vrs; |
| 27 | Thence N 80 W 516 vrs; | N 80 W 516; | Thence N 80 W 516 vrs; |
| 28 | Thence S 60 W 638 vrs; | S 60 W 638; | Thence S 60 W 638 vrs; |
| 29 | Thence N 45 W 436 vrs; | N 45 W 436; | Thence N 45 W 436 vrs; |
| 30 | Thence North 766 vrs; | North 766; | Thence N 826 vrs; |
| 31 | Thence W 495 vrs; | West 495; | Thence West 495 vrs; |
| 32 | Thence S 38 W 1212 vrs; | S 38 W 1212; | Thence S 38 W 1212 vrs; |
| 33 | Thence N 50 W 1115 vrs; | N 50 W 1115; | Thence N 50 W 1115 vrs; |
| 34 | Thence West at 1275 vrs. to the S. E. corner of a survey made for Hitson Brown from which a white oak bears N 82 E 14 vrs. a Spanish oak bears N 48 W 11 vrs. | West at 1275 vrs. the S. E. corner of a survey made for Hitson Brown from which a white oak bears N 82 E 14 vrs. a Spanish Oak bears N 48 W 11 vrs. | Thence West at 1275 vrs. to the S. E. corner of a survey made for Hitson Brown from which a white oak bears N 82 E 14 vrs. a Spanish oak N 48 W 11 vrs. |

We also attach hereto a photostatic copy of a portion of the map introduced in evidence, showing the land sued for by the State. river" in the first and third set of field notes, and to run "up said river with its meanders" in the second set. From the first river call (call No. 2 above) to the

It is to be noted that the meander calls for course and distance as contained in the patent clearly follow in general outline the sinuosities of the river. The second call set out above, being the first river call, calls to run west "with said last call (No. 34 above), approximately 10 miles up the river, not a single marked line, established corner, nor bearing tree is called for though the line ran through a wooded area. Only one change in course is made in any of said field notes, viz.,

call 24 in the third set as shown above is for N. 20 E. 200 varas instead of N. 30 E. 200 varas as in the first two sets of field notes. And only a few minor changes in distances called for are made in the third set of field notes. The most material of these, being in the series of calls from where the river runs generally in a southern direction for a distance of approximately 3 miles to the most southerly major bend, where it changes its course to the northeastward, is call No. 19, shown above, a due west course, which was increased from 356 varas to 556 varas, thus moving the boundary line at that point westward that distance. A careful study of these various meander calls will disclose the following: The first river call (No. 2 above) is to run "west 338 vrs. with the river," whereas the course of the river at this point is S. 75 W. Under settled lines of decision this line must be located as following the river, that being a well-known natural object, rather than run due west as called for in the field notes. If this be done, then a reference to the attached map shows that the next five course and distance calls (Nos. 3 to 8 above) would follow almost the exact course of the stream. And if call No. 7, being that to run west 516 varas (and being the same in all three sets of field notes), be extended 200 varas, or the distance added in call No. 19 in the corrected field notes over the original field notes, thus placing the south portion of the area sued for 200 varas westward, as well as the north portion as so placed by the change in corrected call No. 19, it becomes manifest that the meander line as made in the patent then follows, with reasonable exactitude, the meanders of the river throughout and the vacancy sued for disappears except for small tracts thus left by short and sudden changes in the river course, and these become negligible.

We attach no importance to the failure of the surveyor to attach to the third set of field notes a map or plat showing the location of said survey with reference to the river. Undoubtedly he knew that two such maps showing that said survey extended to the river had already been filed in the general land office, and, in view of this fact and further because there were no changes of any consequence between the third set of field notes prepared by him and the two sets already on file, he doubtlessly concluded that an additional map showing the same thing was unnecessary.

If the course and distance lines as called for in the patent be followed, disregarding the location of the Sabine river, the line contended for by the State would cross the river some seven or eight times, create numerous tracts of land between it and the river, part of them on the north and part on the south side thereof. Manifestly neither the surveyors nor the land commissioner ever contemplated or intended any such result. If the State had intended that the course and distance lines as delineated by the field notes, and not the river, should constitute the south boundary of said survey, no reason which even approaches plausibility can be conceived why such line was not marked at least at pivotal points with bearing trees or river calls; or why such calls should follow so nearly the sinuosities of the stream for a distance of 10 miles, and yet create a vacancy of the dimensions claimed.

It is cogently urged by appellees, with citation of supporting authorities, that the locating language of the patent, "on the north side of the Sabine River," necessarily implies that the river constitutes the boundary. This appears to be the general rule. 8 Am.Jur. § 39, p. 776; numerous annotations in 74 A.L.R. 601–618; Hanlon v. Hobson, 24 Colo. 284, 51 P. 433, 42 L.R.A. 502; Parkman v. Freeman, 121 Me. 341, 117 A. 301; Dutton v. Vierling (Tex. Civ.App.) 152 S.W. 450; County of St. Clair v. Lovingston, 23 Wall. 46, 23 L.Ed. 59. It is also urged that, in addition to the locative language above quoted, the second call, beginning on the river is "Thence W with said river at 338 vrs; Thence South 32 West 200 vrs; etc.," thus using the same language for 33 meander calls to the southwest corner of the survey, admittedly on the river, likewise imports a meaning that the language "with said river" was intended to apply to each succeeding call. This contention is given much force by the fact that such succeeding calls so nearly follow the course of the stream. However this may be, we think the undisputed facts and circumstances shown by the State bring this case within the well-settled rule that where a survey is made upon a stream, and this one undoubtedly was, and the course of the stream is meandered by course and distance calls only, without establishing a traceable marked line to evidence a differ-

958

ent purpose on the part of the surveyor, and a grant made by course and distance calls, the course of the river and not the meander line becomes the boundary. In such case the meander line is deemed fixed for the purpose of determining area of the tract, rather than as defining the exact boundary of the grant. This rule is clearly laid down in Texas in an analogous case in Stover v. Gilbert, 112 Tex. 429, 247 S.W. 841. See, also, Greene v. U. S. (C.C.A.) 274 F. 145; Mitchell v. Smale, 140 U.S. 406, 11 S.Ct. 819, 35 L.Ed. 442; 8 Am.Jur., §§ 29 and 33, pp. 766 and 770, and numerous cases cited from various jurisdictions in support thereof; also 7 Tex.Jur., § 21, p. 139. And when, as here, the purpose of the meander calls is clear, there remains no fact question to be determined by a jury, but the question of whether the river, rather than the course and distance lines, constitute the boundary, is one of law for the court. Schnackenberg v. State (Tex.Civ.App.) 229 S.W. 934; Bolton v. Lann, 16 Tex. 96; Galveston County v. Tankersley, 39 Tex. 651, 652; 9 C.J., § 348, p. 289; 7 Tex.Jur. p. 134.

■ The courts recognize exceptions to the above stated general rule in cases where to maintain such boundary would amount to a fraud against the State; or where natural objects called for are either not in the vicinity of the lines specified, or their location was not known to the surveyor at the time; or where a substantial body of contiguous land is found between the field note lines and the natural object involved, thus indicating an intention on the part of the surveyor to exclude it from the grant. None of these conditions prevail, however, in the instant case. On the contrary, it clearly appears that the surveyor knew the location of the river, and every indication is that each set of field notes returned to the general land office was seeking to follow its course. It is not controverted that the first two sets of field notes undertook to do so. And manifestly the surveyor who returned the third set, though some slight changes were made, was attempting, not to change or vary the actual river boundary as delineated in the former field notes, but to correct same in conformity with the meanders of the river.

■ Under these circumstances the corrected field notes should be construed as a meander of the river, which was at all times intended as the boundary of the sur-

vey, and the rule urged by appellant, and laid down in Keyser v. Meusback, 77 Tex. 64, 13 S.W. 967, and in the Yates Cases (Miller v. Yates, 122 Tex. 435, 61 S.W.2d, 767, Holmes v. Yates, 122 Tex. 428, 61 S.W.2d 771), and Turner v. Smith, 122 Tex. 338, 61 S.W.2d 792, that the grantee, having accepted a patent to the land described in the corrected field notes, is estopped to assert title to any land situated outside of such field notes, does not apply. If different lands had been included in the patent from those described in the former rejected field notes, this rule might apply. But, under the view we take of the record, no such case is here presented. The same land, as actually located on the ground, that is, that lying between the Sabine river and the surveys surrounding the Johnson survey, was intended to be included in each of said sets of field notes; and each of them was patently seeking to follow the same boundary, i. e., the meanders of the Sabine river. We conclude, therefore, as a matter of law from the undisputed facts shown that the Sabine river, and not the course and distance lines, manifestly intended merely to follow its meanders, constituted the south boundary of said survey. That being true, the judgment of the trail court is affirmed.