# B. C. HEBERT ET AL. V. W. P. H. MCFADDIN ET AL.

No. 7229.   Decided April 14, 1937.
Rehearing overruled May 19, 1937.
(104 S. W., 2d Series, 475.)

*H. P. Barry, A. D. Lipscomb, Orgain, Carroll & Bell,* and *Lipscomb & Lipscomb,* all of Beaumont, for plaintiffs in error.

While the decision of a Court of Civil Appeals, remanding a case on a question of fact, is final, yet where the finding of no evidence is on a collateral issue and not made the ground of reversal, nor so considered by the court, the finding is in reality a conclusion of law and reviewable in the Supreme Court. Wilson v. Dickson, (Com. App.) 35 S. W. (2d) 701; Mashburn v. Stewart, 113 Texas 518, 260 S. W. 565.

The rules for construction of field note calls "are invoked only when the calls *must be adopted which are most consistent* with the intention apparent on the face of the grant, or the presumed intention of the grantor. Hence the rule that "the most material and certain calls will control those which are less certain and material." Anderson v. Stamps, 19 Texas 460; McFadden v. White, 214 S. W. 704; Huff v. Crawford, 89 Texas 214, 34 S. W. 606; Finberg v. Gilbert, 104 Texas 539, 141 S. W. 82.

*E. L. Nall, Howth, Adams & Hart,* and *J. L. C. McFaddin,* all of Beaumont, for defendants in error.

Controlling effect will be given to calls for course and distance from the known or undisputed corners, especially where such construction of the surveys is most consistent with the intention to be derived from the entire description and will harmonize the other calls of the field notes of the surveys and the acreage called for to be contained therein. Wilson v. Giraud, 111 Texas 253, 231 S. W. 1074; Turner v. Smith, 122 Texas 338, 61 S. W. (2d) 792; Gerald v. Freeman, 68 Texas 201, 4 S. W. 256; Caswell v. Faulk, 97 S. W. (2d) 341.

MR. JUDGE GERMAN, of the Commission of Appeals, delivered the opinion for the Court.

This suit was instituted in the district court of Jefferson County by B. C. Hebert and others, who will be designated plaintiffs, against W. P. H. McFaddin and others, who will be designated defendants. While in the form of an action of trespass to try title, it developed into a suit concerning boundaries. Plaintiffs are the admitted owners of the E. L. Moore Survey, the U. Holbrook Survey, the San Geronimo Irrigation Company Survey and the Burr & Caswell Survey No. 1, all of which were

surveyed in March, 1881, and patented by separate patents shortly thereafter. Defendants are the admitted owners of what are designated W. P. H. McFaddin Surveys Nos. 15 and 16, patented many years after the surveys owned by plaintiffs were patented. The real question at issue is whether or not at the time the McFaddin Surveys were patented the land included in their boundaries was already included within the boundaries of the surveys which are owned by plaintiffs.

Four opinions have heretofore been written in this case and are found in 118 Texas 314, 15 S. W. (2d) 213; (by Court of Civil Appeals) 32 S. W. (2d) 914; (by Commission of Appeals) 44 S. W. (2d) 938, and (by Court of Civil Appeals) 100 S. W. (2d) 140. Plaintiffs have twice prevailed in the district court. The first time the judgment was reversed because of improper argument. The judgment of the trial court on the second trial was reversed by the Court of Civil Appeals solely because of what it considered to be a failure to properly place the burden of proof as regards Special Issue No. 1. See 100 S. W. (2d) 140. Writ of error was granted in behalf of plaintiffs on the proposition that the burden of proof was by law upon defendants, as regards said special issue, and for that reason the Court of Civil Appeals should have affirmed the judgment of the trial court. Defendants also filed petition for writ of error, urging that the cause be reversed and judgment rendered in their favor, and in the alternative urging other errors on the part of the trial court and of the Court of Civil Appeals. This writ was granted because of granting the application of plaintiffs, and for the reason that the Supreme Court desired to carefully review the case as a whole upon all questions. The facts adduced upon the last trial are much fuller and in some respects different from what they were upon the first trial. All parties have exhaustively briefed the case, and have forcefully submitted their respective contentions and theories. We have undertaken to give very careful consideration to the various questions briefed and to obtain a comprehensive understanding of the many details of the case. The discussion here is from the standpoint of a new and independent investigation of the whole case by this Court.

In the year 1881 Moulton and Weiss made application to the county surveyor of Jefferson County to locate and survey lands to satisfy the following certificates: Pedro de la Garza for a league and labor, E. L. Moore for 311 1/2 acres, James Fletcher for 524 1/2 acres, U. Holbrook for 359 1/2 acres, James M. Byrne for 320 acres, San Geronimo Irrigation Company for 640 acres, and Burr & Caswell No. 1 for 640 acres.

On March 19, 1881, James Ingalls, county surveyor of Jefferson County, made report to the Commissioner of the General Land Office as follows:

"On the 3rd day of March I commenced at a stake in a mound on the South side of Taylor's Bayou, it being the N. E. corner of T. & N. O. Section No. 282. This is nearly due South of the end of the 1st course of the meanders of B. B. B. and C. R. R. Section No. 388 at East 540 vas.

"Thence South at 2440 vas. Cross Salt Bayou, course S. E. 160 vas. across & at 3530 vas. to the corner of T. & N. O. R. R. Sections Nos. 121 & 122, at 5877 vas. to the end of the 3rd course of Section No. 123, this corner is also the corner of Sections Nos. 305 & 306. I continued this line south 18150 vas. to the north line of B. F. Howards survey.

"Thence with the old survey lines to the corner of Nos. 123, 305 & 306 where I commence this work. It is all low marsh covered with high cane and sharp salt grass, shallow lakes & all pasture lands."

At the same time Ingalls sent to the General Land Office separate field notes of the seven different surveys, the field notes being dated as follows: Pedro de la Garza March 12, 1881, James Fletcher March 13, 1881, James M. Byrne March 14, 1881, U. Holbrook March 14, 1881, E. L. Moore March 14, 1881, San Geronimo Irrigation Company March 15, 1881, Burr & Caswell No. 1 March 15, 1881, and Burr & Caswell No. 2 (alternative school section) March 16, 1881. Ingalls also transmitted to the General Land Office a plat which is here reproduced upon a reduced scale and is as follows:

The plat in question is designated "Plat X." We have supplied the letters "A" and "B" and the words "John McGaffey's League." The dotted lines appear on the Ingalls Map as dim lines. "Plat Y" will be explained later.

The field notes of the E. L. Moore Survey made by Ingalls are as follows:

"Beginning at a stk or post on the N. line of John McGaffey's league and at the S. W. cor. of a 359 1/2 acre sur in the name of U. Holbrook post in pond; thence with league line S. 58 W. 23 vrs. to league cor.; thence with R. W. Russell's E. line N. 26 W. 245 vrs. to his N. E. cor.; thence with his N. line S. 64 W. 984 vrs. to a post at the cor. of B. F. Howard's sur.; thence N. at 1950 vrs. post his N. E. cor. and at 1967 vrs. to N. W. cor. of this sur. post for cor.; thence East 1011 vrs. to N. W. cor. of sur. of 359 1/2 acres for Holbrook; thence S. on his W. line at 1742 vrs. to the beginning."

The field notes of the Holbrook Survey made by Ingalls are as follows:

"Beginning at the S. E. Cor. of a sur. of 320 acres for J. W. Byrne, Cert. No. 35/177, and on W. line of D. Burrell sur.; thence south on his west line 703 vrs. to an iron post; thence S. 58° W. with the North line of the McGaffey League at 1953 vrs. a post in pond for corner; thence North 1742 vrs. to a post for 4th cor. of this sur.; thence east at 326 vrs. pass the S. W. cor. of a sur. of 320 acres at 1657 vrs. the place of beginning."

The San Geronimo field notes made by Ingalls are as follows:

"Beginning at a post at the S. W. corner of a 320 acre survey by Cert. No. 35/177 in the name of J. W. Byrne.

"Thence North on its west line at 990 vas. pass its N. W. corner, the S. W. corner of a 524 1/4 acre survey in the name of J. Fletcher at 2421 varas to its N. W. corner on the south line of Pedro de la Garza League & Labor.

"Thence West on its south line 1492 vas. a post for the N. W. corner of this survey.

"Thence South 2438 vas. to a post for S. W. corner of this Survey on B. F. Howard's North line.

"Thence East on his north line 155 vas. to his N.E. corner.

"Thence North 17 vas. to the corner of a 311 1/2 acre survey in the name of E. L. Moore.

"Thence East on the north line, at 1011 vas. pass its N. E. corner & the N.W. corner of a 359 1/2 acre survey in the name of U. Holbrook at 1337 varas to the place of beginning."

The field notes of Burr & Caswell No. 1 call to begin at the S. W. corner of San Geronimo on the north line of the Howard Survey. They run north to its northwest corner, and thence west 332 varas to the S. E. corner of T. & N. O. Survey No. 334.

The last call is for the North line of the Howard Survey East 1345 varas to the beginning.

It will be noted that on the map prepared by Ingalls each of these surveys has the exact connection with and relation to the N. W. corner of the McGaffey League, the Russell Survey, and the Howard Survey as their respective field notes declare. They each occupied these positions on the maps of Jefferson County until after the patent issued to McFaddin Survey No. 15 in 1917. Plaintiffs are contending that they still have these positions as their true locations. Defendants are asserting that the Holbrook Survey is tied to the Burrell Survey on the east; that it should be constructed by course and distance from its call for the S. W. corner of the Burrell Survey, which they claim is marked by an iron stake; that the Moore Survey should then be constructed by its call for the S. W. corner of the Holbrook, and when so constructed by calls for course and distance its S. W. corner will be at a point on the McGaffey north line 1054 varas from its N. W. corner; that the San Geronimo Survey should be constructed by its calls for course and distance from its connections with the Byrne and the Fletcher Surveys on the west, and the Burr & Caswell Survey No. 1 should be constructed by its calls for course and distance from its connection with the San Geronimo; that when this is done the Holbrook, the Moore, the San Geronimo and the Burr & Caswell No. 1 will be broken loose from their connection with the N. W. corner of the McGaffey and from the lines and corners of the Russell and Howard Surveys, leaving an el-shaped vacancy, which was appropriated by the McFaddin patents.

We shall now undertake to state as accurately as we can facts which will make clear defendants' theory.

The John McGaffey League was surveyed in 1835 and its north line is 10,925 varas long. It extends from what appears to be an undisputed corner on Sabine Pass, and runs south 58 west 10,923 varas to a connection with the Russell Survey. Its N. W. corner is recognized by all parties and the locations of the Russell Survey and the Howard Survey are also recognized by all parties. In fact, the field notes in defendants' patent tie to the N. W. corner of the McGaffey the lines and corners of the Russell and Howard Surveys almost precisely as do the field notes in the plaintiffs' surveys.

The Dennis Gahagan Survey was made December 10, 1841. It called to begin at the N. E. corner of the McGaffey Survey on Sabine Pass and to run south 58 west with McGaffey's north line 6923 varas to the S. E. corner of John McGaffey Labor. It then called to run north 7110 varas. Its west line is

indicated on Plat X by the letters A and B. It now seems to be settled with certainty that the call in the Gahagan field notes for 6923 varas was erroneous, and that its true S. W. corner, which is the true S. E. corner of the McGaffey labor, is at a point 5830 varas south 58 west from the McGaffey N. E. corner on Sabine Pass. The point at which it is actually located is designated as the "Cedar Post corner." This error in the call for this line appears to have been discovered for the first time by L. J. Kopke while surveying the McGaffey League in 1892.

On the other hand, it seems to be settled with equal certainty that the west line of the Gahagan Survey was from the date of that survey until as late as 1882, or later, represented upon the maps of Jefferson County at a point 6923 varas south 58 west from the McGaffey N. E. corner on Sabine Pass. The evidence upon this point is so conclusive that we need not set it out. As illustrative of this proof, we have inserted in connection with the copy of Ingalls' plat a copy of the plat recorded in the surveyor's record of Jefferson County at a very early date in connection with the field notes of the McGaffey Survey. It is designated "Plat Y." On this plat we have added the Russell Survey, which is called for by the McGaffey. We find that defendants in their brief, in setting out what they declared are undisputed points, make the following statement:

"That the McGaffey Labor has been, and always was, located with the southeast corner at the cedar stake location, which is a distance of approximately 5900 varas from the northeast corner of the McGaffey League; that this was known to Thomason and Armstrong, the surveyors who located the League and Labor, but that since the location of the Dennis Gahagan Survey by Cordrey, in 1841, it was generally supposed by all surveyors, including Ingalls, that the cedar post corner was located at a distance of 6923 varas from the northeast corner of the McGaffey League and that the west line of the Gahagan was such distance therefrom, such error being caused by an erroneous call for such distance as the south boundary line of the Gahagan, and as a corollary to this fact, it being undisputed that the north boundary line of the McGaffey League is 10,923 varas long, it was generally supposed and believed by all surveyors up to the time that Kopke made his survey in approximately 1892, that the northwest corner of the McGaffey League and also the east line of the Russell was at a point 4000 varas southwest from the cedar post corner."

The McGaffey Labor was surveyed in 1838 and its S. E. corner is admittedly the same as the S. W. corner of the Ga-

hagan Survey, and is in reality marked by the cedar post corner. While in fact this S. E. corner is located at the cedar stake 5830 varas from the N. E. corner of the McGaffey League, nevertheless at all times prior to 1882 it was shown upon the maps of Jefferson County as being 6923 varas from that corner. The McGaffey Labor runs with the league line south 58 west 1179 varas. The D. Burrell Survey calls to begin at the S. W. corner of the labor and runs with the league line south 58 west 845 varas. It is claimed by defendants that its true corner is now marked by an iron stake.

From what has been said above, it therefore appeals that although in truth and in fact the S. W. corner of the Burrell marked by the iron stake is 2024 varas south 58 west from the cedar post, and 7854 varas from the N. E. corner of the McGaffey League on Sabine Pass, yet undisputedly in the year 1881, when Ingalls made his survey, it was represented on the maps as 8947 varas from the corner on Sabine Pass. While therefore said corner was in reality 3030 varas from the N. W. corner of the McGaffey League on the east line of the Russell Survey, yet on the maps of Jefferson County it was represented to be only 1973 varas. Briefly, then, it may be said that defendants' contention is this: That when Ingalls made calls in the field notes of the Pedro de la Garza, the James Fletcher, the James M. Byrne, and the U. Holbrook for the Gahagan west line and for the lines of the Reuss, the Isaacs, the Glenn, the McGaffey Labor and the Burrell, he called for them at their *true* location as determined by the cedar stake corner, and as being farther east or northeast than as actually represented to be on the maps. That this being true, the correct distance from the S. W. corner of the Burrell to the N. W. corner of the McGaffey League was 3030 varas instead of only 1973 varas. That Ingalls constructed the Holbrook and Moore Surveys by course and distance from the east, intending to give them the distances called for, and by mistake called for corners and lines of the McGaffey, the Russell and the Howard Surveys, under the belief that they were nearer to the Burrell S. W. corner by 1054 varas than they really were.

We are unable to agree with defendants' contention that the Russell and Howard Surveys have ever been represented upon the maps of Jefferson County farther east than as actually located today. This is true because the location of the Russell Survey on the maps has at all times been determined by the call in the McGaffey League 10,923 varas south 58 west from the corner on Sabine Pass. It has never been located on the maps by resort to distance from the cedar post corner. In other

words, it is obvious that in locating the Russell Survey on the maps this has been done by reference to the distance of the whole north line of the McGaffey, which calls to connect with it, and it has never been located by calculations of the distance from the Burrell Survey. In our opinion, the location of the Russell and Howard Surveys has never fluctuated on the maps, and defendants are undoubtedly mistaken in assuming that they were shown on the maps east of their now recognized positions, when Ingalls made his survey. We are of the opinion that they were represented to be exactly as they are now represented and recognized to be.

It therefore conclusively appears that if Ingalls based his calculations and constructed these surveys upon distances between the east line of the T. & N. O. Surveys on the west and the *mapped* locations of the Gahagan west line and the chain of small surveys adjoining it, including the Burrell, then there is no conflict between the calls for courses and distances in these several surveys and the calls for the N. W. corner of the McGaffey and for the lines and corners of the Russell and Howard Surveys.

**1-3** We are unable to agree with the contention of defendants that Ingalls either ran the east line of the T. & N. O. Surveys 639 varas east of where it is represented to be on his plat and where it is now recognized to be located, or that he assumed it to be at that point. Their contention is that because the Russell and Howard Surveys were *shown on the maps* to be farther east than they now are, Ingalls assumed that when he protracted the east line of the T. & N. O. Surveys he would intersect the Howard north line 487 varas west of its N. E. corner, but that in fact he never touched the Howard Survey at all. As shown above, the Russell and Howard Surveys have always been mapped at their correct positions, determined by the call of the McGaffey lines for 10,923 varas from Sabine Pass, and it necessarily follows that Ingalls could not have assumed them to be 639 varas farther east. If, therefore, we are to give effect to any statement in Ingalls' report we must give effect to the statement that he protracted the east line of the T. & N. O. Surveys and intersected the north line of the Howard at the point 487 varas west of its N. E. corner. This east line of the T. & N. O. Surveys is represented on the Ingalls map of 1881 exactly at the same place as it is represented on the map which Ingalls forwarded to the Land Office with field notes of the Nancy Rogers Survey which he made November 10, 1890. It is also represented to be almost exactly as it is now represented to be on the maps of Jefferson County. It is not true,

in our opinion, that when the Nancy Rogers Survey was made this east line of the T. & N. O. Surveys was changed, but the call of the Pedro de la Garza Survey for this east line was disregarded, and its west line was moved east 639 varas in order to conform to the call south from T. & N. O. Surveys 121 and 122. The jury in answer to Special Issue No. 3 found that Ingalls, in running the T. & N. O. line south, did not run same from the western corner of Surveys Nos. 121 and 122. The Court of Civil Appeals has undertaken to set aside that finding and to substitute its own finding to the effect that Ingalls did run said line south from the western corner of the two surveys mentioned. The Court of Civil Appeals has the authority to set aside a finding of fact made by a jury, but that court can not substitute its own finding in lieu of the finding of the jury and make same binding upon this Court. It may draw its own conclusions from undisputed evidence, but this Court may do likewise. In addition, it will be noted that the Court of Civil Appeals, in its statement setting aside various jury findings, stated that they were set aside "as wholly without support in the evidence." This gives the Supreme Court jurisdiction to review the evidence and determine whether or not there is evidence to support the findings. Tunnell v. Reeves, (Com. App.) 35 S. W. (2d) 707, and authorities cited. We are of the opinion that if Ingalls ran this line at all he ran it in such position that when protracted it intersected the north line of the Howard Survey as now located at a point 487 varas west of its N. E. corner. If he did not run it there he did not run it at all. But even if he did not run this line, he assumed it to be at exactly the same place. The conclusion reached by the Court of Civil Appeals would contradict the express language of Ingalls' report and the plat which he made, and in our opinion there is no evidence to support the conclusion of the Court of Civil Appeals that Ingalls surveyed the line in question from the western corner of Surveys 121 and 122. There was sufficient proof to sustain the jury's finding to Special Issue No. 3.

It will be observed that on Ingalls' map there are several parallel lines drawn east and west. They are on his plat in dim lines and are represented on the accompanying plat by dotted lines. On these lines are certain figures. It is obvious that Ingalls drew these lines according to scale for the purpose of making calculations. It will be noted that they are drawn from the mapped line of the T. & N. O. Surveys, which is also now the recognized line, to the Gahagan west line and to the corners of the small surveys. The striking circumstance is that the distances indicated on these lines are almost exactly the cor-

rect distances from the mapped position of the Gahagan west line and the corners of the small surveys to the east line of the T. & N. O. Surveys when run so as to intersect the north line of the Howard Survey 487 varas west of its N. E. corner. We are of the opinion that Ingalls clearly intended to make this east line of the T. & N. O. Surveys as thus located and the lines and corners of the Howard and Russell Surveys the western boundaries of the surveys in question.

Proceeding upon the premise that Ingalls made his calculations and constructed the boundaries of the surveys on the understanding that the mapped position of the Gahagan and the connected surveys was correct, then there is no conflict whatever between the calls in the Holbrook, the Moore and San Geronimo Surveys for courses and distances and the calls for the adjoinders. It follows, therefore, that the calls for the N. W. corner of the McGaffey League and for the Russell and Howard Surveys were not made by mistake, but were clearly and undisputedly intended to mark and constitute a part of the boundaries of the Holbrook, the Moore, the San Geronimo and the Burr & Caswell Surveys.

4 We think it not only conclusively appears that Ingalls intended to fix the western boundaries of these surveys as above indicated, but that in arriving at a basis for making his calculations he adopted the distances between the western boundaries as thus established and the mapped position of the Gahagan west line and the adjoining small surveys. The connecting lines which he drew on his map and the figures he placed thereon show this to be true. The jury, in answer to Special Issue No. 4, found that in locating the surveys in question Ingalls regarded the field note call in the Gahagan for 6923 varas. The Court of Civil Appeals undertook to set this finding aside as "wholly without evidence" to support it. We think there is ample evidence to sustain it. We agree that Ingalls had knowledge of the fact that the west corner of the Gahagan was at the cedar post, yet it is certain that he did not know this corner was other than 6923 varas from the N. E. corner of the McGaffey League.

The Court of Civil Appeals made the following finding:

"A finding to the effect that Ingalls in locating the Pedro de la Garza Survey, the Byrne, the Fletcher, and the Holbrook, in his calls in the field notes of the same for the Gahagan, the corners of the Reuss, the corners of the Isaacs, and the corners of the Sarah Glenn, and the corners of the McGaffey Labor and the D. Burrell Survey called for the location of these surveys in accordance with their present accepted location on the ground

as located in regard to the cedar stake as the Southwest corner of the McGaffey Labor and the Southwest corner of the Gahagan Survey."

By what we have said above we do not mean to question that finding, except as it may tend to contradict the holding that Ingalls in arriving at *distances* adopted the distances from his established west line to the mapped location of the lines on the east; our purpose being to show that the calls for courses and distances in the field notes and the calls for the adjoiners on the west are in harmony.

5 We expressly do not pass upon the question of whether or not the surveys in question may or should be extended by virtue of their calls to the true line of the Gahagan as marked by the cedar post and to the true lines of the adjoining surveys as determined by the true west line of the Gahagan. Our dominant holding is that Ingalls located the western boundaries of these surveys as called for in his field notes, and with these boundaries thus located they appropriated the land in question. They extend east at least as far as their distances carry them.

Adopting the theory that the mistake which Ingalls made was in assuming that the true position of the surveys on the east was the same as their mapped position, there is almost complete harmony in all calls in the surveys in question. If we adopt the assumption that the true west line of the Gahagan and other surveys on the east was the basis of his work, then we have conflicts between the calls for courses and distances and the calls for adjoiners on the west; and if the calls for courses and distances were allowed to prevail, then there would be a vacancy between the surveys in question and the surveys on the west, when Ingalls' plat plainly shows he never intended to leave any vacancy there.

The jury being authorized as a matter of law to find that the N. W. corner of the McGaffey League and the lines of the Russell and Howard Surveys were intended to mark the boundaries of plaintiffs' surveys, their finding to Special Issue No. 1 was correct, regardless of the question of burden of proof.

The judgment of the Court of Civil Appeals is reversed and the judgment of the trial court is affirmed.

Opinion adopted by the Supreme Court April 14, 1937.

### ON MOTION FOR REHEARING.

After a careful consideration of motion for rehearing by defendants in error we are still convinced that we reached the

right result as expressed in our original opinion herein. Much alarm is manifested by defendants in error as to results concerning surveys north of the Pedro de la Garza Survey which they are afraid may follow from our opinion. This is based on statements in the opinion which were largely argumentative and were not intended to be considered as a judicial determination of the location of any boundaries not necessarily involved in the decision of this particular case. In order, therefore, that we may define with as much certainty as possible the results of our decision, we make the following comment:

It is our conclusion, based upon the facts of this particular record, that Ingalls, in preparing field notes for the various surveys made by him in 1881, intended to use as a boundary for said surveys the east line of T. & N. O. Surveys located at a point where, when protracted, it would intersect the north line of the Howard Survey, as now established, at a point approximately 487 varas west of its N. E. corner; and to also use as boundaries for said surveys the Howard and Russell Surveys and the N. W. corner of the McGaffey League, as they are now established on the ground.

We are further of the opinion, as shown by the record in this case, that Ingalls intended to appropriate to these surveys all of the vacant land lying south of the N. E. corner of T. & N. O. Survey No. 306 and the S. E. corner of the T. & N. O. Survey No. 305, and east of the east line of the T. & N. O. Surveys, located as above indicated, and the Howard and Russell Surveys on the west, and extending east to the O'Conner and Coleman Surveys, and at least as far east as the mapped location of the west lines of the Gahagan Survey and the small surveys adjoining it; as pointed out in the original opinion.

The motion for rehearing by defendants in error is overruled.

Opinion adopted by the Supreme Court May 19, 1937.