**J. H. BRELAND et al., Appellants,**

**v.**

**Edgar RICE et al., Appellees.**

**No. 7991.**

Court of Civil Appeals of Texas, Texarkana.

Nov. 23, 1971.

Rehearing Denied Dec. 14, 1971.

---

L. F. Burke, Longview, for appellants.

J. R. Cornelius, Cornelius & Cornelius, Jefferson, for appellees.

## ON MOTION FOR REHEARING

CHADICK, Chief Justice.

The motion for rehearing is granted. Effort will be made to confine discussion to the minimum that is compatible with understanding the issues involved. The plaintiffs undertook to establish both a record and a limitation title to the land described in their petition in this trespass to try title action. The defendants were in possession of a substantial part, approximately the south half, of the land de-

scribed, but made no claim of title thereto. The defense was that original title to the land in defendants' possession had never been divested out of the State of Texas, and reposed in the State at the time of trial.

The land described in the trial petition was several hundred acres in area, but to more easily grasp compass directions [1] and shape, it may be mentally pictured as a baseball diamond. The southeast corner would be home plate; the northeast corner first base, the northwest corner second base, and the southwest corner third base. The base path (boundary) from third to home plate would noticeably bulge outward. Location of the southeast corner (home plate) was the crucial issue in the trial court. The location of other corners, though questioned, are adequately established.

The plaintiffs contend the southeast corner (home plate) is on the banks of a watercourse that is known to the present generation as Big Cypress Bayou. The defendants claim this corner's true location is roughly half-way between home plate and first base at a point the defendants identify as the waterline of now vanished Ferry Lake. The patent from the State of Texas to Benjamin F. Lynn gives the general locations of the land granted as *"In Red River District, Cass County, on Ferry Lake * * *"* and continues with a specific description of the southeast (home plate) corner and the first boundary call (home to third base) in this language, to-wit: *"BEGINNING at the S.W. corner of David Lane's western survey, a large pine marked 'BB' from which a sweet gum bears South 79 deg. west 11 vrs. a black oak bears North 68 deg. east 62 vrs. Thence up the lake with its meanders North 77, West Nine Hundred and Sixty-eight varas, North 47 deg. West Eleven Hundred and Ninety varas*

---

1. The Benjamin F. Lynn Survey as a tract of land is situated "generally North 45 degrees East and South 45 degrees West." The boundary line running from the Northeast corner to the Southeast corner is referred to herein as the southeast boundary line.

908

*to a pine tree for the S.W. corner of the survey from which another bears south 23 deg. East 32 varas, another bears North 23 deg. West 3-1/22 varas."*

A registered engineer, whose qualification as a land surveyor is not questioned, testified that he began a survey at a point in the boundary line of the Lynn Survey that corresponds with "first base." He ran the survey clockwise. From his beginning point he followed the course of the Lynn Survey's southeast boundary until he reached Big Cypress Bayou. Along this line he found old fences and other evidences of occupation. The line crossed an inlet to Moseley slough which was probably a small backwater cove off Ferry Lake at an earlier time. At the point where this line reached the top of the high bank of Big Cypress Bayou he found a stake (an iron axle) in the ground. Also, a stumphole *North 87 deg. 30' West 39.8 feet* from the stake. He did not find at this point, or elsewhere, a pine tree marked "BB" nor the bearing trees specified in the description of the survey contained in the patent.

Certain extracts from the findings of fact in the case of D. C. Rowell et al. v. Thomas Jordan, Inc., No. 16016 in the District Court of Marion County,[2] were admitted into evidence. Admission of this record is not briefed as error in this appeal. It is recited as a fact in these extracts that during the period 1839–1874 Caddo Lake was generally known as Ferry Lake, and "(b) That the waters of Black Cypress and of Big Cypress Bayou emptied into Ferry Lake, and in fact that the level of water in Ferry Lake extended back up the Big Cypress as far as the old river town of Smithland, and that Big Cypress and Black Cypress were both during the period in question interchangeably referred to by surveyors and others, as Ferry Lake." Evidence was offered tending to prove that the high bank of Big Cy-

press Bayou at the point of interest here, that is, where the iron axle stake was found (home plate), was above the mean high water level of Ferry Lake in 1833, as well as, above the water level at the time of the trial.

The jury answer to Special Issue No. 1 found that the southeast corner of the Benjamin F. Lynn Survey was at the point the surveyor, heretofore mentioned, located it, that is, where the Lynn southeast boundary line intersects Big Cypress Bayou. Appellant's point of error numbered 10 and 11 urged that "the trial court erred in its judgment" by so locating the Lynn southeast corner. These points, as they are understood, assert that as a matter of law the trial record does not support the judgment rendered.

The contention outlined has several aspects. A primary question is whether or not the jury response to Special Issue No. 1 is supported by any evidence of probative force. The answer must be in the affirmative. The high bank of Big Cypress Bayou in 1838, when the original surveyor located the Lynn Survey's southeast corner, was well above the mean high water mark of Ferry Lake, as it then existed. Ferry Lake at that time engulfed Big Cypress Bayou, its watercourse and flow plain, and Big Cypress was considered a part of the lake and its bank was a part of the bank system of Ferry Lake. Clockwise, the patent's description shows, the directional course of the Lynn survey's southeast boundary called for it to reach and intersect the meander of the Ferry Lake shoreline, now Big Cypress, at a point where a pine tree marked "BB" stood. The pine tree and the witness trees have vanished, but a clockwise extension of the southeast boundary line of the Lynn Survey along the course called for in the patent until it intersects the meanders of Big Cypress Bayou locates a corner and constitutes valid evidence of the loca-

2. Thomas Jordan Inc. v. Skelly Oil Co., 296 S.W.2d 279 (Tex.Civ.App., Texarkana 1956, writ ref'd, n. r. e.) contains a finding of fact in identical language with that introduced in this case at page 284, et seq.

tion of the southeast corner of the Lynn Survey. The evidence supports the jury's findings.

Other aspects of points of error numbered 10 and 11 have been examined, as have all other points of error briefed, and no reversible error is found. The judgment of the trial court must be affirmed, and it is so ordered.

DAVIS, Justice (dissenting).

I dissent. This is a trespass to try title suit by and on behalf of five (5) groups of forty-five (45) Plaintiffs and against nineteen (19) Defendants. The parties will be referred to as they were in the trial court. Plaintiffs' Original Petition was filed on April 5, 1968. Plaintiffs' First Amended Petition was filed on February 18, 1969. Plaintiffs' Second Amended Petition was not filed by the District Clerk. Anyway, the case was tried on Plaintiffs' Second Amended Petition by Edgar Rice, Et Al. v. J. H. Breland, Et Al. All of the Plaintiffs sued for a certain described tract of land situated in the B. F. Lynn Survey, A–243, in Marion County, Texas, and described as follows:

Part of the B. F. Lynn Survey, A–243, Marion County, Texas, to-wit:

Beginning at the Southeast corner of the Richardson 85.10 acre tract formerly called 60 acres, as shown by deed from Victoria Lamar, et al to Ada Richardson, et al, dated March 14, 1905, recorded in Volume G–1, Page 396, Deed Records of Marion County, Texas, an axle for corner, and a forked sweet gum tree marked "X" bears N 29 deg. 15′ W. 15.3 feet;

THENCE North 45 deg. 26′ East 2106 feet to another axle for corner;

THENCE North 72 deg. 32′ West 2930 varas;

THENCE North 41 deg. 20′ West 2485 feet; North 55 deg. 40′ West 400 feet to a point in the Northwest line of the

Lizzie Lewis original tract, shown by deed from Ada Salmon to Helen Lewis, recorded in Volume E–1, Page 490, Deed Records of Marion County, Texas;

THENCE South 42 deg. 55′ East 1615 feet to a 14″ pine marked X on the North Bank of Big Cypress Bayou;

THENCE down said Bayou with its meanders as follows:

S 25 deg. 25′ E. 189.40 feet;
S 31 deg. 23′ E. 415.00 feet;
S 32 deg. 10′ E. 428.50 feet;
S 40 deg. 33′ E. 351.00 feet;
S 56 deg. 04′ E. 208.00 feet;
S 43 deg. 00′ E. 197.00 feet;
S 47 deg. 26′ E. 326.70 feet;
S 58 deg. 06′ E. 292.80 feet;
S 64 deg. 27′ E. 481.00 feet;
S 58 deg. 57′ E. 482.00 feet;
S 60 deg. 15′ E. 232.00 feet;
S 56 deg. 39′ E. 275.00 feet;
S 53 deg. 11′ E. 315.00 feet;
S 59 deg. 05′ E. 161.00 feet;
S 64 deg. 09′ E. 280.80 feet;
S 69 deg. 37′ E. 151.00 feet;
S 76 deg. 04′ E. 191.00 feet;
S 81 deg. 14′ E. 110.50 feet;
S 88 deg. 59′ E. 167.70 feet;
S 73 deg. 56′ E. 82.00 feet;
to the PLACE OF BEGINNING.

There was no common source of title alleged by the Plaintiffs. The Plaintiffs relied upon the Ten (10) Year Statute of Limitation. The original Patent from the State of Texas to Benjamin F. Lynn Survey was offered in evidence by the Plaintiffs and Defendants. It reads as follows:

"State of Texas

To Patent

Benjamin F. Lynn Vol. 6

"No. 850

"In the name of the State of Texas.

"To all to whom these presents shall come, know ye I, George T. Wood Governor of the State aforesaid, by

virtue of the power vested in me by law, and in accordance with the laws of said state in such case made and provided, do by these presents grant to Benjamin F. Lynn his heirs or assigns forever sixteen $\frac{216095}{1000000}$ labors of land situated and described as follows: In Red River District Cass County on Ferry Lake by virtue of his Headright Certificate No. 94 issued by the Board of Land Commissioners of Red River County on the 2nd day of February, 1838. Beginning at the S.W. corner of David Lane's Western Survey a large pine marked B.B. from which a sweet gum bears South 79° West 11 varas a black oak bears North 68° East 6 varas. Thence up the lake with its meanders North 77 West Nine Hundred and Sixty-eight varas. North 47° West Eleven Hundred and Ninety varas to a pine tree for the S. W. corner of the survey from which another bears South 23° East 3 varas, another bears North 23° West 3½ varas. Thence North 45° East at 600 varas at 1560 varas *at 1630 varas* (sic) at 1700 varas, and at 3050 varas crosses branches Eighty Three Hundred and fifty-five varas to a stake for the North corner of this survey from which a black oak bears South 17° East 14 varas a red oak bears South 53° West 21 varas both marked X. Thence South 45° East at 455 varas a branch Nineteen Hundred and Sixty-five varas to a stake from which a black jack bears South 73° West 21 varas, another bears North 26° West 30 varas. Thence South 45° West Seven Thousand Eight Hundred and Five varas to the PLACE OF BEGINNING.

"Hereby relinquishing to· him the said Benjamin F. Lynn and his heirs or assigns forever all the right and title in and to said land, heretofore held and possessed by the said state and I do hereby issue this letter Patent for the same.

"IN TESTIMONY WHEREOF, I have caused the seal of the State affixed as well as the seal of the General Land Office.

Done at Austin on the Tenth day of March in the year of our Lord One Thousand Eight Hundred and Forty Nine.

"Geo. W. Smith Geo. T. Wood, Governor

Commissioner of the General Land Office

"General Land Office Austin, Texas April 15th, 1915

"I, J. T. Robison, Commissioner of the General land office of the (SEAL) State of Texas hereby certify that the foregoing is a true and correct copy from the record kept in this office.

"In testimony whereof, I hereunto set my hand and affix the impress of the seal of said office the date last above written.

"J. T. Robison, Commissioner of General Land Office

"Filed for Record April 19th, 1915 at 8 o'clock a. m.

"Recorded April 20th 1915 at 2 o'clock p. m.

"L. E. Russell, County Clerk"

After each group of Plaintiffs had put on all of their evidence, Defendants made a motion for an instructed verdict. It was overruled. After the Defendants had put on all their testimony they again made a motion for an instructed verdict. It was overruled.

The Trial Court submitted six (6) special issues to the jury. He did not inquire if the Plaintiffs had acquired title and possession of the tract of land as described in the Second Amended Original Petition as amended by three or four trial amendments. Instead, he submitted the following special

issues which contain the jury's answer thereto:

"SPECIAL ISSUE NO. 1

"Do you find from a preponderance of the evidence that the South or Southeast corner of the B. F. Lynn Survey is located on the North bank of Big Cypress Bayou as shown on the plat prepared by Ralph Daniels and introduced herein as Plaintiffs' Exhibit No. 52, as shown by the Red Letter 'B' thereon?

Answer Yes or No.

ANSWER <u>Yes</u>

"SPECIAL ISSUE NO. 2

"Do you find from a preponderance of the evidence that the West or Southwest Corner of the B. F. Lynn Survey is located as shown in paragraph 8 of the Findings of Fact in the case of D. C. Rowell, et al vs. Thomas Jordan, Inc., et al, No. 16016 in the District Court of Marion County, Texas, and as shown by the red letter "D" on Plaintiffs' Exhibit No. 52?

Answer Yes or No.

ANSWER <u>Yes</u>

"SPECIAL ISSUE NO. 3

"Do you find from a preponderance of the evidence in this case that Plaintiffs, Fred Lewis, Mildred Lewis Mason, Leon U. Mason, Rose Lewis, Luna Reed, Kenard Reed, Thelma Mitchell and husband, Ray Mitchell, Debora Lewis, Clarence Douglas, Delon Douglas, Colonel Lewis, Mrs. Claude L. Lewis Smith, James McDonald, Claudetta Lewis McDonald, Don L. Wilburn, Gwendolyn F. Lewis Wilburn, Willie M. Lewis, Vallie R. Lewis, Valentine Lewis, Jr., Karl A. Lewis, Lizzie Nixon, Voila Morris, and Burnett Lewis, and those under whom they claim, either in person or through a tenant or tenants or partly in person and partly through a tenant or tenants, held exclusive, peaceable and adverse possession of the land described in the deed from Ada Salmon to Helen Lewis, dated January 11, 1904 and recorded in Volume E–1, Page 490, of the Deed Records of Marion County, Texas, and as shown as Lizzie Lewis, et al, 200 acre tract on Plaintiffs' Exhibit No. 52, cultivating, using or enjoying the same, for any consecutive period of ten years, or longer, prior to April 5, 1968?

Answer Yes or No.

ANSWER <u>Yes</u>

"SPECIAL ISSUE NO. 4

"Do you find from a preponderance of the evidence in this case that Plaintiffs, Edgar Rice, Allie Rice, Effie Ray, a widow, Mildred Stockland and husband, Ross Stockland, Lovie Lang Ray, a widow, Pattie Frankland, a widow, Jimmy Lang, Charles Lang, Edna Hicks and husband, Melvin Hicks, Earl Rice, Erma Edmon, a widow, Emerson Hodge and J. E. Mauldin, and those under whom they claim, either in person or through a tenant or tenants, or partly in person and partly through a tenant or tenants, held exclusive, peaceable and adverse possession of the land described in the deed from Victoria Lamar, et al, to Ed Rice, dated December 17, 1904, and recorded in Volume F–1, Page 513, of the Deed Records of Marion County, Texas, and being the tracts shown as Earl Rice, et al, and the Mauldin tract, on Plaintiffs' Exhibit No. 52, cultivating, using or enjoying the same, for any consecutive period of ten years or longer prior to April 5, 1968?

"Answer Yes or No.

ANSWER <u>Yes</u>

"SPECIAL ISSUE NO. 5

"Do you find from a preponderance of the evidence in this case that Plaintiff Edgar Rice and those under whom he claims, either in person or through a tenant or tenants, or partly in person and

partly through a tenant or tenants, held exclusive, peaceable and adverse possession of the land described in the deed from J. O. Barker and wife, Ethel, to Edgar Rice, dated February 21, 1955, and recorded in Volume 194, page 186 of the Deed Records of Marion County, Texas, and being the tract shown as Edgar Rice on Plaintiff's Exhibit No. 52 cultivating, using or enjoying the same, for any consecutive period of ten years, or longer, prior to April 5, 1968?

"Answer Yes or No.

ANSWER Yes

"SPECIAL ISSUE NO. 6

"Do you find from a preponderance of the evidence in this case that Plaintiffs, Ollie Nelson, Maybelle Perkins, Murrie Johnson Kelly, widows, and Ike Lewis, and those under whom they claim, either in person or through a tenant or tenants, or partly in person and partly through a tenant or tenants, held exclusive, peaceable and adverse possession of the land described in a deed from Victoria Lamar, et al, to Ada Richardson, et al, dated March 14, 1905, and recorded in Volume G–1, Page 396 of the Deed Records of Marion County, Texas, and being the tracts shown as Richardson, et al, on Plaintiff's Exhibit No. 52 cultivating, using or enjoying the same, for any consecutive period of ten years, or longer, prior to April 5, 1968?

"Answer yes or no.

ANSWER Yes"

After the jury had answered the special issues the Trial Judge entered a judgment in which he partitioned four (4) tracts of land among various Plaintiffs. The Plaintiffs did not seek a partition of the real estate; they only sought title under the ten (10) year Statute of Limitation to five tracts of land. Plaintiffs did not seek to recover the one (1) acre tract that belongs to a church.

On November 4, 1968, Plaintiffs filed a motion for severance and a default judgment against Defendant, Violet York Smith, now known as Violet York Breland, in and to a certain tract of land situated in the O. P. Deaner Survey in Marion County, Texas. The motion for severance was granted and the Trial Judge granted a default judgment against Defendant, Violet York Smith, now known as Violet York Breland, in the O. P. Deaner Survey in Marion County, Texas, on November 8, 1969. Later on, during the trial of the case, the Plaintiffs took the position that there was no such survey as the "O. P. Deaner Survey" situated in Marion County, Texas.

The record in this case is extremely voluminous and extra hard to understand. The land sought to be recovered is supposed to be a part of the Benjamin F. Lynn Survey (hereinafter referred to as the Lynn Survey) as a result of a Patent that was issued by the State of Texas to Benjamin F. Lynn on March 10, 1849. The original survey was made by James Barker, on March 25, 1838, during the Red River Raft which caused the creation of Ferry Lake by the high elevation of the water level. That was at the time the land was surveyed and the Patent was granted by the State of Texas to B. F. Lynn on March 10, 1849. The Plaintiffs put on several witnesses and each of these witnesses, on cross-examination, admitted certain facts that would correspond with the original patent. It will be noted that the original Patent calls for the beginning of the Lynn Survey as being the Southwest corner of David Lane's West Survey, at a point where a pine tree marked B.B. from which a sweet gum bears S. 79° West 11 varas and a black oak bears North 68° East 6 varas. Then the original Patent says, "Thence up the lake with its meanders North 77 West 986 varas, North 47° West 1190 varas to a pine tree for the Southwest corner of the survey from which another bears South 23° East 3 varas; another bears North 23° West 3½ varas." All of these calls run along the Northeast

edge of Ferry Lake; they do not go into the water. It then described the Northwest line of the Lynn Survey and the Northeast line of the Lynn Survey. In the last call, it described the Southeast boundary line of the Lynn Survey as follows: "Thence South 45° West 7,805 varas to the place of beginning." This is the only error discovered in the original Patent, except it did not make a complete enclosure.

Mr. Ralph Daniels, a State Licensed Land Surveyor, tried to make a survey of the Lynn Survey. He could not locate the beginning point where the pine tree was marked B.B. He testified, as a Surveyor, he surveyed clockwise and I believe he said that he began at the Southeast corner of the Lynn Survey. He located what he thought to be the Southeast corner of the Lynn Survey to be a car axle on the banks of Big Cypress Creek where he found a forked sweet gum marked X. He made other findings which he swore may have been a part of the original survey but they were off course in measurements and distance. He then surveyed what he thought to be the Southwest line of the Lynn Survey up the Big Cypress Creek, or Bayou, to the Southeast corner of the Clark Simmons Survey. Then he surveyed the Northwest line; next, he surveyed what he thought to be the Northeast line; and, from there he surveyed back to the place of beginning. In addition to that, he surveyed three tracts of land that the Plaintiffs claim they own under the ten (10) year Statute of Limitation.

Mr. M. H. Hackney, a licensed State Land Surveyor of Texas, made a graphic scale of the Southwest portion of the Lynn Survey and adjacent acres which showed that the Northeast Boundary Line of Ferry Lake was located anywhere from one-half (½) mile to one and one-half (1½) miles Northeast of Big Cypress Creek. His testimony was that all the land between the Northeast Boundary Line of the Old Ferry Lake and Big Cypress Creek belonged to the State of Texas. As evidence of a mistake in Mr. Daniels' survey, he swore that the Ada Richardson tract of land as described and referred to as containing sixty (60) acres actually contained 81.1 acres of land. Mr. Daniels further testified that he knew that there were additional lands in the Lynn Survey than those that were shown on the plat. He further testified that he did not have a copy of the Pleadings to use at the time he made his survey and the survey is not bound by the Pleadings.

Defendants filed a motion for judgment non obstante veredicto. It was overruled. Defendants filed a motion for rehearing. It was overruled. They have perfected their appeal and bring forward 14 points of error.

The points of error are as follows:

1. The Trial Court erred in the judgment it rendered;

2. In rendering its judgment for Fred Lewis for the land described in its judgment;

3. In rendering its judgment for Edgar Rice, et al, for the land described in its judgment;

4. In rendering its judgment for Edgar Rice for the land described in its judgment;

5. In rendering the judgment for Ollie Nelson, et al, for the land described in its judgment;

6. In taxing Court costs against the Defendants;

7. In not instructing the jury, at Defendants' request, that their possession must be exclusive and not joint;

8. In refusing and not granting the Defendants' motion for instructed verdict after Plaintiffs announced they had rested their case;

9. In refusing and not granting the Defendants' motion for instructed verdict after Plaintiffs announced they had closed their case;

10. In its judgment that, the Southeast corner of the B. F. Lynn Survey and the Southwest corner of the David Lane Survey are located at a point on the North bank of Big Cypress Bayou;

11. In its judgment that, the South line of the B. F. Lynn Survey is on the North bank of Big Cypress Bayou;

12. In permitting Plaintiffs to offer their statement of facts from the case styled Thomas Jordan, Inc., et al, Appellants v. Skelly Oil Company, Appellees, No. 6886 in the Court of Civil Appeals for the Sixth Judicial District of Texas at Texarkana, Texas;

13. There is no evidence to support the verdict of the jury to Special Issues No. 3, 4, 5 and 6;

14. In permitting Plaintiffs to introduce a letter from the General Land Office to Cornelius & Cornelius, 123 North Polk Street, Jefferson, Texas.

In a trespass to try title suit, when issue has been made in the evidence as alleged in the pleadings as to the location of the ground of the Lands involved, the Court has no authority to enter judgment describing the lands. Smithers v. Smith, 35 Tex.Civ.App. 508, 80 S.W. 646, 98 Tex. 83, 81 S.W. 283. A judgment in a trespass to try title suit is void where the description therein varied from the description contained in Plaintiffs' petition. Martin v. Abbott, Tex.Civ.App., 24 S.W.2d 488, N.W. H.

The Texas Civil Statutes require a judgment of the Trial Court to conform to the pleadings. Plaintiffs must recover in their right and upon facts stated in the pleadings so that a judgment supported by proof of facts which were not alleged cannot stand. Article 2211 Vernon's Ann.Civ.St., and cases cited therein. It matters not what the prayer in the petition may be, one must recover in the right in which he sues and upon the facts stated in his pleadings.

Milliken v. Smoot, 64 Tex. 171; Murphy v. Bain, Tex.Civ.App., 142 S.W.2d 598; Starr, et al. v. Ferguson, Comm. of App., 1942, 140 Tex. 80, 166 S.W.2d 130.

Plaintiffs sued for one solid tract of land. The Trial Court entered a judgment to four (4) different tracts of land. Their field notes, even after having been amended twice, three times by trial amendments, do not close, and the judgment does not conform to the pleadings. Mr. Hackney testified without contradiction, "I had before me the original petition, · · · ·, I made exact corrections that Mr. Cornelius was permitted to make on amendments in Court yesterday and I then completed the computation for closure. Mathematically, the notes do not get together by a little over 93 feet."

The judgment divides or partitions the land in four (4) separate tracts to four (4) groups of Plaintiffs; none of which is supported by the pleadings; or the evidence. The first tract called for 121.46 acres. Said tract is not described in Plaintiffs' Second Amended Petition, is not described in the evidence, nor in Exhibit No. 52. The second tract called for in the judgment contains 67 acres. It is not so alleged, as such, in Plaintiffs' Second Amended Original Petition, is not described in the evidence, nor noted in Plaintiffs' Exhibit No. 52. The third tract in the judgment called for 0.96 acres of land. This tract is not described in Plaintiffs' Second Amended Original Petition and is not sued for. This is the church property. No allegations of any kind were alleged and no citation, or citations, were issued thereon. The fourth tract called for 35 acres. It is not described in Plaintiffs' Second Amended Original Petition, is not described in the evidence, nor on Plaintiffs' Exhibit No. 52. Again, Mr. Daniels testified on direct examination there were additional tracts of land within the Lynn Survey other than those tracts shown on the plat. He testified that he could not state whether there is more acreage contained in the area from the river (Big Cypress) to the North

line of the survey than is called for in the Patent. He testified that he was hired to run out the Richardson tract, the Rice tract and the Lewis estate; only three tracts of land. Mr. Daniels testified most positively that he would not substitute Caddo Lake for Big Cypress Bayou, or vice versa. That he would not use interchangeably the designation of Ferry Lake with Big Cypress Bayou. The northeast boundary line of Ferry Lake, until this day, is plainly visible where the water washed into the banks of the Northeast side. Many of the Plaintiffs' witnesses verified this fact.

Shortly after the beginning of the 19th Century, about 1812, a log jam occurred on Red River immediately below where Big Cypress Creek runs into Red River. The "Arthur Kidder Report" makes quite a reference to the Red River Log Jam that caused the water to rise 15 to 20 feet higher above the mean sea level where it remained until about 1873 or 1874, after nitroglycerin was made, and the log jam was removed. During the Red River Raft, it caused the high water elevation and the creation of Ferry Lake. It was during this period of time that the Patent to the Lynn Survey was granted by the State of Texas and was surveyed out and conveyed to B. F. Lynn. In the Patent it calls for the beginning of the Lynn Survey to begin at the Southwest corner of David Lane's West Survey on the *North bank of Ferry Lake.* It describes the boundaries of the Lynn Survey as following the meanders of Ferry Lake to the Southeast boundary line of the Clark Simmons Survey in Marion County, Texas. This court wrote an opinion of the case of Thomas Jordan, Inc., et al. v. Skelly Oil Company, Tex.Civ.App., 296 S.W.2d 279, 1956, w. r., n. r. e. In that case this court had to decide the location of the Clark Simmons Survey, and the old town of Smithland. Personally, I was on the Court at that time and I had my doubts about it. Some of the language used in the case did not correspond with the pleadings and evidence in this case. This case was offered in evidence in the case at Bar, and this writer thinks that it was wrongfully admitted. I will point out that in the Findings of Fact, the Trial Court made an erroneous finding as follows:

"(a) That Caddo Lake, or Ferry Lake, located partly in the Eastern portion and partly across the State Line of Louisiana, was during the period in question generally known as Ferry Lake."

The Trial Court was speaking of the "Arthur Kidder Report" and the Red River Log Raft which caused the mean high water level to back up to the Clark Simmons Survey. Ferry Lake was no part of Caddo Lake or Big Cypress Bayou. There were other lakes that formed during this high water period, some known as Taylor Lake, Carters Lake (which is a part of Caddo Lake), Moseley Slough, and others. It will be noted that the Clark Simmons Survey actually begins about the Northeast part of Ferry Lake on or near Big Cypress Creek. Therefore, the fact that the Lynn Survey and the Clark Simmons Survey adjoin each other has nothing to do with the Ferry Lake area between the B. F. Lynn Survey and Big Cypress Creek. There is much said in Jordan v. Skelly, supra, about Ferry Lake. It was said by Surveyor Mullins who wrote the corrected field notes for the Clark Simmons Survey, the material portion of which is as follows:

"Situated in Cass County *near Black and Big Cypress on Ferry Lake* being *the tract on which the town of Smithland is located.*

"Beginning at the S.E. corner of a 640 acre Survey in the name of Isaac Jones, and on the *N.W. boundary of a Survey made for B. F. Lynn, a Stake from which a pine bears S. 45° W 8 vrs off, another pine bears N. 70° W. 6 vrs off both marked JW.*

"Thence West 1746 varas to a stake standing on the S. Boundary Line of Marvel R. Jones 640 Acres Survey from which a Black Oak bears S 20° E 14 off another Black Oak S 29° E 24 vrs off both marked JW.

"Thence South 45 W. 3300 varas, to a forked water oak *standing on the N. side of Ferry Lake, and near the junction of Big Cypress & Black Cypress* from which an elm bears S. 92° E 8½ vrs off, a pine bears S. 70° E., all marked JW.

"Thence South 45 E. 1389 varas to *B. F. Lynn's N.W. boundary line.*

"Thence North 45 E. along the N.W. boundary of *B. F. Lynn's Survey to the Beginning.*" (Emphasis added)

For that reason, and that reason alone, I almost wrote a dissenting opinion.

We must bear in mind that a surveyor when he goes to survey land from an original Patent from the State of Texas that he is required to follow the footsteps of the original surveyor as closely as possible; although, he may correct some distances relative to calls in order to make the Patent close. The Clark Simmons Survey contains ambiguous statements on its face when applied to the ground. Such is not true of the Lynn Survey. The only call that is not up to par is the last call that would cross Big Cypress Creek, or Bayou, and run way over into Harrison County. The only other thing was that the Lynn Survey did not make a complete closure. This could be surveyed out in such a way as to make it close.

Plaintiffs cite us the case of Lock v. Morris, C.C.A. (1956), Tex.Civ.App., 287 S.W.2d 500, w. r., n. r. e., on the theory that the Defendants offered into evidence all the evidence that had been offered by the Plaintiffs. In the event the Plaintiffs had proved a case, and the Defendants had offered the same instruments in evidence, without any limitation, they would be bound thereby. But, let me call their attention to the fact that the case of Lock v. Morris, supra, was a stock law election case which prevented the people of Marion County from permitting their stock to run at large. Such being true, stock were permitted to run at large in Marion County until after that decision became final. Therefore, it would seem to me that stock would be permitted to run at large throughout the Lynn Survey unless the people who were farming the same had voluntarily fenced up the outside of their tract of land. But, it seems from the evidence that only small tracts of land were fenced up to keep the stock that were running at large from eating up the crops that the people were growing during the time they were claiming this land under the adverse possession rule of law. Many of the deeds offered by the Plaintiffs and also by the Defendants contained no field notes whatever; or, any description by which the land purported to be conveyed could be located. D. T. Carroll Corp. v. Carroll, C.C.A. San Antonio (1953), Tex.Civ.App., 256 S.W.2d 429, w. r., n. r. e. Articles 1288 & 3995 Subdivision 4, V.A.C.S. 45 Tex.Jur.2d 459, Sec. 49.

I am gravely concerned about the points of error 2, 3, 4, and 5 as to the amount of land awarded to the Plaintiffs that was partitioned off to various Plaintiffs were neither described in the pleadings nor proved in the evidence, as well as Point No. 13 where the Defendants say there is no evidence to support the verdict of the jury as to Special Issues No. 3, 4, 5, and 6. The land sued for is described in Plaintiffs' Second Amended Original Petition and is copied in this opinion. Special Issues No. 3, 4, 5, and 6 are also set out in this opinion. Neither of these special issues describe a tract of land upon which Plaintiffs allege their cause of action, or offered proof thereon.

By Special Issue No. 3, the trial court inquired if the jury found that Fred Lewis, et al, (a group of the Plaintiffs) had held exclusive, peaceable and adverse possession of a 200 acre tract of land. In the judgment, the trial court awarded Fred Lewis, et al, 121.46 acres of land.

By Special Issue No. 4, the trial court inquired if Edgar Rice, et al, (a group of the Plaintiffs) had held exclusive, peaceable and adverse possession of 100 acres known as the Earl Rice and the Mauldin 100 acre tract. In the judgment, the trial court awarded Edgar Rice, et al, 67 acres of land.

By Special Issue No. 5, the trial court inquired of the jury whether or not Edgar Rice had held exclusive, peaceable and adverse possession of the land described in the deed from J. G. Barker, and wife, Ethel, to Edgar Rice, dated February 21, 1925, and recorded in Volume 194, page 186 of the Deed Records of Marion County, Texas, and being the tract shown as Edgar Rice on Plaintiffs' Exhibit No. 52, cultivating, using and enjoying the same for any consecutive period of ten years prior to April 5, 1968. According to the evidence Edgar Rice swore that he bought 100 acres of land and that he had used and occupied the same. But, we do not find it on the Plaintiffs' Exhibit No. 52 as shown in Special Issue No. 5.

There is a one (1) acre tract located in the Southwest corner of a 100 acre tract on which is noted "Church". In the judgment, the trial court awarded to Edgar Rice 0.96 acres of land.

By Special Issue No. 6 the trial court inquired of the jury whether or not Ollie Nelson, et al, (a group of the Plaintiffs) had held exclusive, peaceable and adverse possession of the land described in a deed from Victoria Lamar, et al, to Ada Richardson, et al, dated March 14, 1905 and recorded in Volume G–1, Page 396 of the Deed Records of Marion County, Texas and being the tracts shown as Richardson, et al, on Plaintiffs' Exhibit No. 52 cultivating, using and enjoying the same for any consecutive period of ten (10) years prior to April 5, 1968. By the Daniels survey this tract of land contained 85.1 acres of land. In the judgment, the Trial Court awarded to Ollie Nelson, et al (a group of the Plaintiffs) 35 acres of the Richardson tract of land.

There is another tract of land set out in Plaintiffs' Exhibit No. 52 which the evidence showed contained 200 acres of land in the Earl Rice Estate. No special issue was submitted on this tract of land and no judgment was entered therefor. I would hold that it was incumbent upon the Plaintiffs to show beyond any reasonable doubt that they owned the tract of land that was described in the Second

Amended Original Petition, which included the Earl Rice Estate. Then, it was incumbent upon the Trial Court to award the Plaintiffs a judgment for the total acreage that was contained in that tract of land. Instead, he only awarded Fred Lewis, et al, 121.46 acres, Edgar Rice, et al, 87.00 acres, Edgar Rice 0.96 acres and Ollie Nelson, et al, 35 acres. All of the acreage that was claimed by the Plaintiffs at the trial of the case, according to the evidence, amounted to 719.49. Therefore, there is no evidence to support the jury's answer to Special Issues No. 3, 4, 5, and 6. It was also an error for the Trial Court to enter a judgment for any lesser number of acres of land than was alleged in the Plaintiffs' Second Amended Original Petition, which also, I think, includes the Earl Rice Estate, without specific proof as to the owners of each tract awarded in the judgment.

I firmly believe that a judgment of the Trial Court in a trespass to try title suit must contain the actual description of the land that is alleged in the Plaintiffs' petition upon which the case is tried. Otherwise, the judgment is a nullity. Article 2211, VACS; Milliken v. Smoot, 64 Tex. 171; Murphy v. Bain, C.C.A. Amarillo, Tex.Civ.App., 142 S.W.2d 598; Starr, et al. v. Ferguson, Comm.App.1942, 140 Tex. 80, 166 S.W.2d 130, Opin. adpt. by the Texas Supreme Court.

In 1939, the Texas Legislature repealed all laws covering the practice and procedure in civil actions and relinquished to the Supreme Court all rule-making power subject to legislative veto. The act became effective September 1, 1941. The submission of a case to a jury, whether it be a land suit, a tort action, or a divorce action, is now covered by Rules 271 to 279, inclusive, T.R.C.P. An interesting article by Clayton L. Oren on the question of The Court's Charge in a Land Suit appears in 13 Southwestern Law Review 44 (1959). This article is most interesting indeed and recites many land mark cases. The true test in this case is whether or not some of

the land that was claimed by the Plaintiffs was claimed from the State of Texas as a common source of title down to date. This, they cannot do. The Lynn Survey described the land as being on the Northeast side of Ferry Lake and has nothing to say about Big Cypress Bayou, Big Cypress River, or Big Cypress Creek. As a result of the Arthur Kidder Report about the Red River Raft where the log jam occurred below the mouth of Big Cypress Creek where it empties into Red River and caused the water to rise from 15 to 20 feet above the mean sea water level and form Ferry Lake must be considered. I am attaching hereto a record plat of the Southwest portion of the Lynn Survey which shows the distance of the Northeast Boundary Line of the meanders of Ferry Lake to be Northeast of Big Cypress Creek.

**RECORD PLAT**
SOUTHWEST PORTION B. F. LYNN SURVEY & ADJACENT AREA
MARION CO. TEXAS

[A5642]

If the Lynn Survey begins at a point on the Northeast Boundary of Ferry Lake and runs with its meanders and intersects the Southeast boundary line of the Clark

Simmons Survey then all of the land between that point and Big Cypress Bayou, or Big Cypress Creek, is the property of the State of Texas. I would suggest that a surveyor go to a point where the original Patent to the Lynn Survey intersects the Clark Simmons Survey and survey counterclockwise with the Northeast meanders of old Ferry Lake 1190 varas and 968 varas to a point where the place of beginning is called for in the original Patent to the Lynn Survey. This will be in keeping with the testimony of the Surveyor, M. H. Hackney, which the Plaintiffs apparently tried to show.

The Trial Court permitted the Plaintiffs to read some findings of fact to the jury and offer in evidence a statement of facts in the case of Thomas Jordan, Inc., et al. v. Skelly Oil Company, supra, into evidence in this case. That case was a trial as to the Clark Simmons Survey. It was wholly immaterial and hearsay evidence as to the Defendant. It should not have been admitted. He also permitted the Plaintiffs to read from the findings of fact in the Rowell case, which was objected to but no error was brought on that point. I will state here that this evidence should not be admitted because it is hearsay evidence as to the Defendants. The Trial Court permitted the Plaintiffs to enter a letter from the General Land Office to Cornelius & Cornelius, Attorneys at Law, 123 North Polk Street, into evidence. That too was error. The Plaintiffs also brought forward in the exhibits a letter that was written to Edgar Rice from the General Land Office which should not have been admitted into evidence because these letters from the General Land Office were not sworn to, nor certified to, as required by Art. 3731a, V.R.C.S. Neither of these letters bear the Seal of the General Land Office.

I would sustain Appellants' points of error 2, 3, 4, 5, 8, 9, 10, 11, 12, 13 and 14. I would overrule Appellants' points of error 1, 6, and 7.

For these reasons, the judgment of the Trial Court should be reversed and the cause remanded for a new trial. If the Northeast meanders of Ferry Lake can be located, then there are a number of acres in the area from which the water has receded since 1874 that belongs to the State of Texas and to the school children.

## ON MOTION FOR REHEARING

I wrote the original opinion in this case after much study and deliberation. In considering the case, I thought it was necessary to consider the fact that five (5) different groups of forty-five (45) Plaintiffs had sued for five (5) different tracts of land situated in the Lynn Survey against nineteen (19) Defendants. After a careful study of the record, I tried to make it my honest opinion that the Lynn Survey had its points of beginning at the Southwest corner of David Lane's Western Survey at a large pine marked B. B. and on the *Northeastern line of Ferry Lake.* The Southeastern boundary line of the Lynn Survey follows the meanders of Ferry Lake. If such facts are true, then all the land between the Northeast boundary line of Ferry Lake and Big Cypress Creek belongs to the State of Texas. It doesn't make any difference whether or not we affirm the judgment of the trial court, if the land actually belongs to the State of Texas, the judgment would have no effect as against the State of Texas.

The Plaintiffs sued for the entire Lynn Survey. But, it was supposed to be divided into five (5) different tracts. Nowhere in the pleadings did either group of Plaintiffs allege that they owned a specific tract of land; nor did they prove their title thereto. According to the survey that was made by Ralph Daniels, registered public surveyor, the Lynn Survey contains more than 816.88 acres of land. The five (5) different groups of Plaintiffs sued for the 816.88 acres of land.

Plaintiffs take the position that I erred in holding that the rule of law announced in the case of Lock v. Morris, C.C.A.

(1956), Tex.Civ.App., 287 S.W.2d 500, w. r., n. r. e., is not applicable to the case at bar. It is true that the Plaintiffs offered in evidence the various deeds to certain tracts of land. They were also offered in evidence by the Defendants. But, there was no allegation that the Plaintiffs owned the various tracts of land that they were seeking to recover and the proof was not sufficient. Therefore, Plaintiffs did not prove their title by limitation to the five (5) different tracts of land which they sought to recover. It seems that five (5) groups of forty-five (45) Plaintiffs joined together in a suit in trespass to try title to five (5) different tracts of land sued nineteen (19) Defendants therefor. It has always been my understanding that before a Plaintiff, or Plaintiffs, can recover in a suit in trespass to try title to a tract of land, they must first plead the description of the tract of land, prove the description at the time of the trial and that they have occupied the same for at least ten (10) years, unmolested.

I cannot understand the judgment that was entered by the Trial Judge. The five (5) different groups of forty-five (45) Plaintiffs were seeking to recover five (5) different tracts of land. These tracts of land were not described in the petition nor were they proved by the evidence.

It seems that one group of the Plaintiffs, Fred Lewis, et al, sought to recover 234.46 acres of land; Edgar Rice, individually, sought to recover 99 acres of land; another group of Plaintiffs, Edgar Rice, et al, sought to recover 100 acres of land; another group of Plaintiffs, Earl Rice Estate, sought to recover 200 acres of land; and, another group of Plaintiffs, Ollie Nelson, et al, sought to recover 81.1 acres of land, making a total of acres sought to be recovered of 714.56 acres of land. Neither of these tracts of land were alleged in the petition, nor were they proved by the evidence. Also it was not proved that the various groups of Plaintiffs had occupied the same for ten (10) consecutive years. The judgment that was entered by the Trial Judge only awarded to one group of Plaintiffs, Fred Lewis, et al, 121.46 acres of land; the judgment awarded to another group of Plaintiffs, Edgar Rice, et al, 67 acres of land; the judgment awarded to Edgar Rice, individually, 0.96 acres of land, being designated as "church property," which was not sued for; and, the judgment awarded to another group of Plaintiffs, Ollie Nelson, et al, 35 acres of land. This makes a total of 224.42 acres of land that was awarded by the judgment. The Defendants were actually claiming 263.91 acres of land that the five (5) different groups of Plaintiffs were seeking to recover.

Without citing the many authorities in a trespass to try title suit, it has always been my understanding that a person seeking to recover a tract of land in a trespass to try title suit must file that suit individually and apart from any other suit. They must allege the description of the land in the petition. They must prove the description of the land that is sought to be recovered; and, that they have occupied the same for ten (10) full years consecutively.

I would overrule the motion for rehearing.